# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **HILLCREST OPTICAL, INC., a corporation, on behalf of itself and all others in the State of Alabama similarly situated,** | * | |
| | * | |
| | * | **CIVIL ACTION NO.:** |
| **Plaintiffs,** | | **1:20-CV-275-JB-N** |
| | * | |
| **v.** | | |
| | * | |
| **CONTINENTAL CASUALTY COMPANY,** | | |
| | * | |
| **Defendant.** | * | |

## CONTINENTAL CASUALTY COMPANY'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

{B3537951}

# **TABLE OF CONTENTS**

TABLE OF CONTENTS..............................................................................ii

TABLE OF AUTHORITIES ......................................................................iii

INTRODUCTION ......................................................................................1

SUMMARY OF PLAINTIFF'S ALLEGATIONS ....................................3

LEGAL STANDARD................................................................................10

ARGUMENT .............................................................................................11

I.     PLAINTIFF'S COMPLAINT IS DUE TO BE DISMISSED IN ITS
       ENTIRETY BECAUSE THE LOSSES ALLEGED BY THE PLAINTIFF
       ARE NOT COVERED BY THE POLICY. ..............................................11

       A.     Plaintiff failed to allege "direct physical loss of or
              damage to" to Covered Property. ........................................13

       B.     Plaintiff cannot circumvent the requirement of "direct
              physical loss or damage" by alleging that the premises
              were rendered "physically unusable for their intended
              purpose."................................................................................19

II.    COUNT I OF PLAINTIFF'S COMPLAINT SEEKING A DECLARATORY
       JUDGMENT FAILS AS A MATTER OF LAW AND IS DUE TO BE
       DISMISSED. .......................................................................................28

III.   BECAUSE PLAINTIFF'S INDIVIDUAL CLAIMS FAIL, THE ENTIRE
       ACTION MUST BE DISMISSED. .........................................................29

CONCLUSION ..........................................................................................30

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aderholt v. McDonald*, 226 So. 3d 648 (Ala. 2016)................................................18

*AFLAC Inc. v. Chubb & Sons, Inc.*, 581 S.E. 2d 317 (Ga. Ct. App. 2003)................................................................................................................15

*Am. Chemicals & Equip., Inc. v. Cont'l Cas. Co.*, No. 6:15-CV-00299-MHH, 2017 WL 2405102 (N.D. Ala. June 2, 2017) ................................30

*Am. Resources Ins. Co. v. H&H Stephens Constr., Inc.*, 939 So. 2d 868 (Ala. 2006) ................................................................................ 24, 25

*American States Ins. Co. v. Martin*, 662 So. 2d 245 (Ala. 1995) ..........................16

*Arnold v. State Farm Fire & Cas. Co.*, Civ. No. 17-0148-WS-C, 2017 WL 5451749 (S.D. Ala. Nov. 11, 2017)................................................18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..................................................................10

*B.D.B. v. State Farm Mut. Auto Ins. Co.,* 814 So. 2d 877 (Ala. Civ. App. 2001)................................................................................................13

*Bass v. Butler*, 116 F. App'x 376 (3d Cir. 2004)...................................................30

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)............................................10

*Bolin v. Story*, 225 F.3d 1234 (11th Cir. 2000)......................................................29

*Camp's Grocery Store, Inc. v. State Farm Fire & Cas. Co.*, No. 4:16-CV-0204-JEO, 2016 WL 6217161 (N.D. Ala. 2016).......................................16

*Cherokee Ins. Co. v. Sanches*, 975 So. 2d 287 (Ala. 2007)....................................11

*Cowart v. GEICO Cas. Co.*, No. 1171126, 2019 WL 5485268 (Ala. Oct. 25, 2019)................................................................................25

*Crenshaw v. Lister*, 556 F.3d 1283 (11th Cir. 2009)................................................6

*CSX Transp., Inc. v. Trism Specialized Carriers, Inc.*, 182 F.3d 788 (11th Cir. 1999).....................................................................................11

*Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683 (5th Cir. 2011)..................................................................................28

*Gavrilides Management Co. v. Michigan Insurance Co.*, Case No. 20-258-CB-C30 (Ingham County) (July 1, 2020)........................ 14, 20

*Goldbert v. Nat'l Union Fire Ins. Co.*, 143 F. Supp. 3d 1283 (S.D. Fla. 2015)..................................................................................11

*Great Am. Al. Co. v. Bravo  Food Serv. LLC*, No. 7:19-CV-1026-RDP, 2019 WL 6219143 (N.D. Ala. Nov. 21, 2019) .........................10

*Harry's Cadillac-Pontiac-GMC Truck Co. v. Motors Ins. Co.*, 486 S.E.2d 249 (N.C. Ct. App. 1997) .................................................25

*Heatherwood Holdings, LLC v. First Commercial Bank*, 61 So. 3d 1012 (Ala. 2010)..................................................................................18

*Hoefling v. City of Miami*, 811 F. 3d 1271 (11th Cir. 2016) ....................................6

*J.O. Emmerich & Assocs., Inc. v. State Auto Ins. Cos.*, No. 3:06CV00722-DPJ-JCS, 2007 WL 9775576 (S.D. Miss. Nov. 19, 2007) ..................................23

*Johnson v. Allstate Ins. Co.*, 505 So. 2d 362 (Ala. 1987).......................................13

*Jordan* v. *Nat'l Acc. Ins. Underwriters Inc.*, 922 F.2d 732 (11th Cir. 1991)..................................................................................12

*Kelley v. Royal Globe Ins. Co.*, 349 So.2d 561 (Ala. 1977)....................................12

*Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-cv-23362-KMM, 2018 WL 3412974 (S.D. Fla. June 11, 2018)........................................................15

*Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323 (S.D.N.Y. 2014)............................................ passim

*Northeast Ga. Heart Ctr., P.C. v. Phoenix Ins. Co.*, No. 2:12-CV-00245-WCO, 2014 WL 12480022 (N.D. Ga. May 23, 2014) ..................... 20, 23

*Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, No. 1:03-CV-3154-JEC, 2004 WL 5704715 (N.D. Ga. Dec, 15, 2004) ............................................28

*Pentair, Inc. v. Am. Guarantee & Liability Ins. Co.*, 400 F.3d 613 (8th Cir. 2005 .................................................................................22

*Phoenix Ins. Co. v. Infogroup, Inc.*, 147 F. Supp. 3d 815 (S.D. Iowa 2015)....................................................................................20

*Pielage v. McConnell*, 516 F.3d 1282 (11th Cir. 2008) ...........................10

*Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226 (3d Cir. 2002) ....................................................................14

*Przedwojewski v. NHS Management, LLC*, No. 7:11-CV-2114-LSC, 2012 WL 12895655 (N.D. Ala. Feb. 17, 2012) .....................................30

*Remedios v. Nat'l Fire & Marine Ins. Co.*, No. 1:19-CV-21559-KMM, 2019 WL 7956170 (S.D. Fla. Aug. 29, 2019).........................29

*Roundabout Theatre Co. v. Continental Cas. Co.*, 302 A.D.2d 1 (N.Y. App. Div. 2002)............................................................. 14, 23

*Royal Ins. Co. of Am. v. Thomas*, 879 So. 2d 1144 (Ala. 2003)..............................28

*Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140 (Ala. 2005)................12

*Shawnee, Inc.* v. *Commonwealth Ins. Co.*, No. 3:09-CV-02391, 2010 WL 2696782 (M.D. Pa. July 6, 2010)....................................................27

*Somnus Mattress Corp. v. Hilson*, 280 So. 3d 373 (Ala. 2018) ............................18

*South Texas Med. Clinics, P.A. v. CNA Fin. Corp.*, Civ. A. No. H-06-4041, 2008 WL 450012 (S.D. Tex. Feb. 15, 2008) .............................28

*Southern Hospitality, Inc. v. Zurich Am. Ins.*, 393 F.3d 1137 (10th Cir. 2004).....................................................................27

*Stewart Title Guar. Co.* v. *Shelby Realty Holdings, LLC*, 83 So. 3d 469 (Ala. 2011)....................................................................18

*Tate v. Allstate Ins. Co.*, 692 So.2d 822 (Ala. 1997)..............................................12

*Travelers Cas. and Sur. Co. v. Ala. Gas Corp.*, 117 So. 3d 695 (Ala. 2012)................................................................ 13, 18

*Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265 (11th Cir. 2014)....................................................................11

*Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F. 2d 267 (5th Cir. 1990)................15

*Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687
(Ala. 2001).......................................................................................................12

*Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co.*, 480 F.3d 1254 (11th
Cir. 2007)........................................................................................................12

*University Image Prods., Inc. v. Chubb Corp.*, 703 F. Supp. 2d 705
(E.D. Mich. 2010) ...........................................................................................14

**Other Authorities**

*Black's Law Dictionary* (11th ed. 2019)....................................................................13

*CDC Reopening Guidance for Cleaning and Disinfecting Public Spaces,
    Workplaces, Businesses, Schools, and Homes* ......................................................17

*Couch on Insurance* ...................................................................... 16, 18, 19

*Insurance Law & Practice* .........................................................................24

*Merriam Webster's Dictionary* ...............................................................14

## INTRODUCTION

This is an insurance coverage action arising out of the COVID-19 pandemic, in which Plaintiff, Hillcrest Optical, Inc. ("Hillcrest"), seeks coverage for loss of business income under a commercial property insurance policy issued by Defendant Continental Casualty Company ("Continental").[1] The claimed loss of business income stems from Hillcrest's inability to achieve certain optometry sales and income due to a March 27, 2020 social distancing Order issued by the Alabama State Health Officer (the "Order"). The Order restricted non-essential and non-emergency business activities in order to slow the person-to-person transmission of COVID-19. Plaintiff reports a month-long interruption to its optometry business, but does not allege any direct physical loss of or damage to its personal property, as is required to trigger coverage under its Policy.

Hillcrest purchased from Continental a CNA Connect Policy, which includes a Businessowners Special Property Coverage Form and a Business Income and Extra Expense Endorsement. (Doc. 1, ¶ 8.) The unambiguous Policy provides coverage for direct physical loss of or damage to property subject to the Policy's

---

[1] Hillcrest filed this action as a putative class action on behalf of all businesses in the State of Alabama that were issued insurance policies by Continental containing the Businessowners Special Property Coverage Form (Form SB-146801-I), and the Business Income and Extra Expense Form (Form SB146802E), whose policies were in effect on March 27, 2020, who filed claims after that date under these Coverage Forms, and whose claims were denied coverage by Continental, or whose claims Continental did not expressly deny but failed to accept as covered losses. (Complaint, Doc. 1, ¶ 26.) As fully set out in this Memorandum of Law, this Court should not only dismiss Hillcrest's claims but also dismiss the entire action.

terms, conditions, limits, limitations and exclusions. Plaintiff's claims for Business Income and Extra Expense coverage fail because the plain language of the Policy provides that such coverage applies *only* when the suspension of Plaintiff's operations is caused by "direct physical loss of or damage to" property at the insured's premises. The Complaint does not plausibly allege that Hillcrest's optometry business suffered *any* direct physical loss or damage. Without this required trigger for coverage, no recovery is available.

In an effort to circumvent the plain language of the Policy, Plaintiff alleges that coverage is available because it was unable to use the insured premises for certain business purposes as a result of the March 27, 2020 Order. However, the loss incurred by Plaintiff—economic loss with no attendant property loss or damage—is not a loss covered by the commercial property insurance policy issued by Continental. Plainly stated, Plaintiff's view that it is entitled to coverage because it could not derive the maximum economic benefit of its business during the time period that the social distancing Order was in place does not comport with the unambiguous terms and conditions of the Policy. Indeed, one court recently rejected this very same argument in a claim arising out of the COVID-19 pandemic, describing it as "nonsense." The Policy requires that there be direct physical loss of or damage to property at the optometry business. There is no such

loss or damage here. Because Plaintiff fails to establish its prima facie case for coverage, the Complaint should be dismissed.

Plaintiff's claims for Declaratory Judgment (Count I) and Breach of Contract (Count II) are, therefore, due to be dismissed with prejudice for failure to state a claim upon which relief may be granted. The Declaratory Judgment claim is due to be dismissed for the additional reasons that the claim is duplicative of the Breach of Contract claim asserted in Count II and because Plaintiff has an adequate remedy at law in the form of damages for the alleged breach of contract. Finally, because Plaintiff's individual claims fail, Plaintiff cannot seek to prosecute the claims of the purported class.

## SUMMARY OF PLAINTIFF'S ALLEGATIONS

### Hillcrest's Alleged Losses and This Lawsuit

Plaintiff Hillcrest owns and operates an optometrist's office in Mobile, Alabama. (Complaint, Doc. 1, ¶ 5.) Plaintiff alleges that on March 13, 2020, Kay Ivey, Governor of the State of Alabama, declared the COVID-19 pandemic to be a State Public Health Emergency and directed state agencies to exercise their regulatory authority accordingly. (Complaint, Doc. 1, ¶ 16.) Plaintiff further alleges that on March 27, 2020, Dr. Scott Harris, the Alabama State Health Officer, entered a statewide order which provided that effective March 28, 2020 at 5:00 P.M., all medical procedures were postponed until further notice, except

procedures necessary to treat an emergency medical condition. (*Id.*, ¶ 17; Doc. 1-3, p. 4.) According to the Complaint, "Hillcrest shut down in compliance with the Order." (Complaint, Doc. 1, ¶ 16.) Plaintiff alleges that "[e]ffective April 30, 2020 at 5:00 p.m., Dr. Harris entered a Statewide Order allowing the resumption of all medical procedures" and that "Hillcrest was completely shut down from March 28 until April 30, when it was allowed to reopen" under Dr. Harris's April 30, 2020 order. (*Id.*, ¶ 17-18.)

On April 16, 2020, Plaintiff submitted a claim to Continental seeking coverage for lost business income. (*Id.*, ¶ 19.) Plaintiff reported that it shut down its optometry business in compliance with the social distancing Order. (*Id.*) That same day, Continental began investigating the claim. Continental's claim professional requested additional information from Plaintiff through a series of telephone conversations and emails. Plaintiff confirmed that there was no exposure to COVID-19 at the optometry business. (Doc. 1-5, p. 3.) Moreover, Plaintiff informed Continental that its "business was closed because of concern about the spread of COVID-19," and acknowledged that "[o]ptometric practices are not considered nonessential." (*Id.*)

On May 4, 2020, while Continental was still assessing Plaintiff's coverage claim, Plaintiff's counsel demanded a resolution of the claim within five business days. (*Id.*, ¶ 19.) On May 14, 2020, when Continental did not provide a coverage

response by Plaintiff's arbitrary deadline, Plaintiff initiated this action. (*Id.*, ¶ 20.)

Plaintiff seeks to assert claims on behalf of itself and a proposed class of similarly

situated business owners that suffered losses as a result of the Order. (*Id.*, ¶ 26.)

## The March 27, 2020 Public Health Order

The March 27, 2020 Order acknowledged that "the appearance of COVID-

19 in the State poses the potential of widespread exposure to an infectious agent

that poses a significant risk of substantial harm to a large number of people." (Doc.

1-3, p. 3.) The Order further noted that "further social distancing measures are

necessary to be implemented on a statewide basis to prevent the spread of COVID-

19." (*Id.*) In response to these concerns, the Order contained the following

limitations on medical procedures:

> Effective March 28, 2020 at 5:00 P.M., all dental,
> medical, or surgical procedures shall be postponed until
> further notice, subject to the following exceptions:
>
> (a) Dental, medical, or surgical procedures necessary
>     to treat an emergency medical condition. For
>     purposes of this order, "emergency medical
>     condition" is defined as a medical condition
>     manifesting itself by acute symptoms of sufficient
>     severity (including sever pain, psychiatric
>     disturbances, and/or symptoms of substance abuse)
>     such that the absence of immediate medical
>     attention could reasonably be expected by a
>     person's licensed medical provider to result in
>     placing the health of the person in serious jeopardy
>     or causing serious impairment to bodily functions
>     or serious dysfunction of bodily organs.

> (b) Dental, medical, or surgical procedures necessary to avoid serious harm from an underlying condition or disease, or necessary as part of a patient's ongoing and active treatment.

(*Id.*, p. 6.)

Although Hillcrest contends that it "shut down in compliance with" the State Health Order, the State Health Order did not require Hillcrest to "shut down." The State Health Order provided that businesses like Hillcrest could only perform "procedures necessary to treat an emergency medical condition," and "procedures necessary to avoid serious harm from an underlying condition or disease, or necessary as part of a patient's ongoing and active treatment." As such, any decision by Hillcrest to "completely shut down" its business from March 28, 2020 to April 30, 2020 was voluntary and, unquestionably, not because of any "direct physical loss of or damage to" the personal property on the premises.

**Plaintiff's Policy**

Plaintiff purchased from Continental a CNA Connect Policy, Policy No. B 4030650931, for the period May 1, 2019 to May 1, 2020 (the "Policy"). (Complaint, Doc. 1, ¶ 8.) A copy of the Policy was attached as Exhibit A[2] to the Complaint. (Doc. 1-2.)

---

[2] "A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." *Hoefling v. City of Miami*, 811 F. 3d 1271, 1277 (11th Cir. 2016) (citing *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009)).

Plaintiff's Policy provides both property coverage and liability coverage. The property coverage, as set forth in the Businessowners Property Coverage Form and Business Income and Extra Expense Endorsement are relevant to Plaintiff's claims here. (Complaint, Doc. 1, ¶ 8.)

The Businessowners Special Property Coverage Form states as follows:

**A. COVERAGE**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declaration caused by or resulting from a Covered Cause of Loss.

(Doc. 1-2, p. 19.) The Policy defines "Covered Causes of Loss" as "RISKS OF DIRECT PHYSICAL LOSS" unless the loss is limited or excluded by the provisions of the policy. (Doc. 1-2, pp. 20–21.)

The Business Income and Extra Expense Endorsement provides additional coverage for "Business Income" and "Extra Expense" losses, and allows Plaintiff to recover business income lost as a result of the suspension of its operations caused by "direct physical loss of or damage to" Plaintiff's premises insured under the Policy. The relevant term of the Policy provides:

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. . . .

(Doc. 1-2, p. 41.) The Policy defines "suspension" as "[t]he partial or complete cessation of [the insured's] business activities," (*id.*, p. 38), and "operations" as "the type of [the insured's] business activities occurring at the described premises and tenantability of the described premises" (*id.*, p. 36.) The Policy defines "period of restoration" as "the period of time that a. [b]egins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and b. [e]nds on the earlier of: (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent location." (*Id.*) Although Plaintiff alleges a suspension of its business operations it does not allege a period of restoration.

Extra Expense coverage allows Plaintiff to recover reasonable and necessary expenses incurred during the "period of restoration" that would not have been incurred if there had been no direct physical loss of or damage to the insured's property from a Covered Cause of Loss. The relevant term of the Policy provides:

> a. Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss.
>
> b. We will pay Extra Expense (other than the expense to repair or replace property) to:

> (1) Avoid or minimize the "suspension" of business and to continue "operations" at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement premises or temporary locations; or
>
> (2) Minimize the "suspension" of business if you cannot continue "operations."

(*Id.*, p. 42.) The Plaintiff does not assert what expenses it incurred under the Extra Expense provision.

Although not referenced by Plaintiff in the Complaint, the Policy also contains a Civil Authority Endorsement. Civil Authority coverage allows Plaintiff to recover its lost Business Income and Extra Expense when a civil authority—*i.e.*, a government entity—prohibits access to Plaintiff's property because of "direct physical loss of or damage to" property at locations other than the insured's premises. This coverage would, for example, cover business interruption if a government entity prohibited access to the insured's premises as a result of a fire in a building across the street from the premises. The relevant term of the Policy provides:

> the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises. The civil authority action must be due to direct physical loss of or damage to property at locations, other than described premises, caused by or resulting from a Covered Cause of Loss.

(Doc. 1-2, p. 67.)

## **LEGAL STANDARD**

The standard of review applicable to a motion to dismiss under Rule

12(b)(6) is well-settled:

> To survive a motion to dismiss, a complaint must contain
> sufficient factual matter, accepted as true, to "state a
> claim for relief that is plausible on its face." A claim has
> facial plausibility when the plaintiff pleads factual
> content that allows the court to draw the reasonable
> inference that the defendant is liable for the misconduct
> alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 & 556 (2007) (internal citations omitted)).

"Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Although the Court must "take the factual allegations in the complaint as

true and construe them in the light most favorable to the plaintiff," *Pielage v.*

*McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008), "the tenet that a court must

accept as true all of the allegations contained in the complaint is inapplicable to

legal conclusions." *Iqbal*, 556 U.S. at 662. "If the court determines that well-

pleaded facts, accepted as true, do not state a claim that is plausible, the claims are

due to be dismissed." *See Great Am. Al. Co.* v. *Bravo  Food Serv. LLC*, No. 7:19-

CV-1026-RDP, 2019 WL 6219143, at *2 (N.D. Ala. Nov. 21, 2019). Even taking

Plaintiff's factual, non-conclusory allegations as true, however, the unambiguous terms of the Policy do not permit recovery, and the Complaint should be dismissed.[3]

## **ARGUMENT**

I.  **PLAINTIFF'S COMPLAINT IS DUE TO BE DISMISSED IN ITS ENTIRETY BECAUSE THE LOSSES ALLEGED BY THE PLAINTIFF ARE NOT COVERED BY THE POLICY.**

Plaintiff's claims for breach of contract and declaratory judgment fail to state a claim upon which relief can be granted because Plaintiff does not allege any "direct physical loss of or damage to Covered Property" as required under the Policy. Plaintiff seeks coverage under the Businessowners Special Property Coverage Form and the Business Income and Extra Expense Endorsement, neither of which provide coverage where, as here, the insured property sustains no direct physical loss or damage.[4] Plaintiff's claims are, therefore, due to be dismissed. *See Goldbert v. Nat'l Union Fire Ins. Co.*, 143 F. Supp. 3d 1283, 1291 (S.D. Fla. 2015) ("When considering insurance coverage disputes, Courts routinely dismiss

---

[3] Alabama law applies in this case because this Court is bound to apply Alabama's choice of law rules. *See Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1270 (11th Cir. 2014). Alabama applies the rule of *lex loci contractus* to coverage claims and thereby applies the law of the place where the contract was issued and delivered. *Cherokee Ins. Co. v. Sanches*, 975 So. 2d 287, 293 (Ala. 2007). In the absence of authority from the Alabama Supreme Court directly on point, this Court must determine the issues of state law as it believes the Alabama Supreme Court would. *CSX Transp., Inc. v. Trism Specialized Carriers, Inc.*, 182 F.3d 788, 790 (11th Cir. 1999).

[4] Even if Plaintiff could establish a "direct physical loss of or damage to" insured property, several exclusions would preclude coverage. Defendant reserves the right to assert any and all applicable exclusions.

complaints for failure to state a claim when a review of the insurance policy and the underlying claim for which coverage is sought unambiguously reveals that the underlying claim is not covered." (collecting cases)).

Under Alabama law, "the insured bears the burden of proving coverage." *Jordan* v. *Nat'l Acc. Ins. Underwriters Inc.*, 922 F.2d 732, 735 (11th Cir. 1991). "In Alabama, the interpretation of a contract, including an insurance contract, is a question of law." *Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co.*, 480 F.3d 1254, 1258 (11th Cir. 2007). Alabama courts "enforce the insurance policy as written if the terms are unambiguous." *Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005); *see also Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 691 (Ala. 2001) ("Insurance companies are entitled to have their policy contract enforced as written."). "The fact that the parties interpret the insurance policy differently does not make the insurance policy ambiguous." *Twin City Fire Ins. Co.*, 817 So. 2d at 692 (citing *Tate v. Allstate Ins. Co.*, 692 So. 2d 822 (Ala. 1997)). Alabama courts give policy terms the meaning that "a reasonably prudent person applying for insurance would have understood the term[s] to mean." *Herrera*, 912 So. 2d at 1144 (internal quotation marks omitted). Importantly, "ambiguities are not to be inserted by strained or twisted reasoning." *Twin City Fire Ins. Co.*, 817 So. 2d at 692 (citing *Kelley v. Royal Globe Ins. Co.*, 349 So.2d 561 (Ala. 1977)). Courts must remain careful not "to rewrite policies to provide

coverage not intended by the parties." *Johnson v. Allstate Ins. Co.*, 505 So. 2d 362, 365 (Ala. 1987).

Where, as here, the insured cannot meet its burden to show that the policy provides the claimed coverage, the Complaint should be dismissed.

## A.    Plaintiff failed to allege "direct physical loss of or damage to" Covered Property.

Plaintiff does not assert a claim that falls within the Policy's coverage under the Business Income and Extra Expense Endorsement. The Policy expressly and unambiguously provides that such coverage applies only when a suspension of Plaintiff's operations is caused by "direct physical loss of or damage to property at the described premises." (Doc. 1-2, p. 41.) Because the Complaint does not plausibly allege that the personal property at Plaintiff's premises suffered any direct physical loss or damage, and attributes Plaintiff's suspension of business (and resulting losses) to the Order, not property damage, no coverage is available.

Under Alabama law, when analyzing a policy, the words used in the policy must be given their common, everyday meaning and must be interpreted "'as a reasonable person in the insured's position would have understood them.'" *Travelers Cas. and Sur. Co. v. Ala. Gas Corp.,* 117 So. 3d 695, 699 (Ala. 2012) (quoting *B.D.B. v. State Farm Mut. Auto Ins. Co.,* 814 So. 2d 877, 879-80 (Ala. Civ. App. 2001)).   Under its plain, ordinary meaning, for loss or damage to be "physical," it must be "tangible" or "material." *See, e.g.,* Physical, *Black's Law*

*Dictionary* (11th ed. 2019) (defining "physical" as "[o]f, relating to, or involving material things; pertaining to real, tangible objects"); *see also Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002) ("In ordinary parlance and widely accepted definition, physical damage to property 'means a distinct, demonstrable, and physical alteration' of its structure.").

Similarly, courts have held that "[t]he words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself . . . ." *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) (citing *Roundabout Theatre Co. v. Continental Cas. Co.,* 302 A.D.2d 1 (N.Y. App. Div. 2002)). Stated differently, "some external force must have acted upon the insured property to cause a physical change in the condition of the property." *MRI Healthcare Ctr. of Glendale*, 187 Cal. App. 4th at 780. In defining the term "physical," courts have looked to *Merriam Webster's Dictionary*, which defines "physical" as something with a "'material existence: perceptible especially through the senses and subject to the laws of nature.'" *University Image Prods., Inc. v. Chubb Corp.*, 703 F. Supp. 2d 705, 709 (E.D. Mich. 2010) (quoting *Merriam Webster's Online Dictionary*).

This requirement was recently confirmed by a Michigan court that dismissed a claim on all fours with Plaintiff's claim here. (*See Gavrilides Management Co. v.*

*Michigan Insurance Co.*, Case No. 20-258-CB-C30 (Ingham County) (July 1, 2020), at https://www.youtube.com/watch?v=Dsy4pA5NoPw&feature=youtu.be). The court granted summary disposition to the defendant, emphasizing the "requirement that there has to be some physical alteration to or physical damage or tangible damage to the integrity" of the property to trigger coverage. (*Id.*)

Likewise, the weight of authority has held that a "direct physical loss 'contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.'" *MRI Healthcare Ctr. of Glendale, Inc.,* 187 Cal. App. 4th at 779 (quoting *AFLAC Inc. v. Chubb & Sons, Inc.*, 581 S.E. 2d 317, 319 (Ga. Ct. App. 2003)); *see also Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F. 2d 267, 270-71 (5th Cir. 1990) ("The language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state – for example, the car was undamaged before the collision dented the bumper."); *Mama Jo's, Inc. v. Sparta Ins. Co*., No. 17-cv-23362-KMM, 2018 WL 3412974, at \*9 (S.D. Fla. June 11, 2018) ("[D]irect physical loss 'contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.").

All of this caselaw is also consistent with a leading treatise on insurance law:

> The requirement that the loss be "physical," given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.

10A *Couch on Insurance; see also MRI Healthcare Ctr. of Glendale*, 187 Cal. App. 4th at 778 (quoting same).

And, these precedents are all consistent with Alabama law. In construing policy provisions, Alabama courts have held that the term "property damage" encompasses only "physical harm or damage" to tangible property and does not include purely economic losses such as lost profits or loss of anticipated benefit of a bargain. *See Camp's Grocery Store, Inc. v. State Farm Fire & Cas. Co.*, No. 4:16-CV-0204-JEO, 2016 WL 6217161, at *8 (N.D. Ala. 2016); *Am. States Ins. Co. v. Martin*, 662 So. 2d 245, 249 (Ala. 1995) (analyzing comprehensive general liability policy and holding that "strictly economic losses like lost profits, loss of an anticipated benefit of a bargain, and loss of an investment, do not constitute damage or injury to 'tangible' property"). Therefore, the losses sustained by Plaintiff could not be construed as "property damage" under Alabama law.

Plaintiff concedes in its pleadings that its closure was not the result of direct physical loss of or damage to personal property on the premises but rather, alleges

its "complete shut down" was the result of the State Health Order.[5] Nor does Plaintiff allege that the personal property at its premises was physically lost or damaged in any way. Indeed, Plaintiff admits that "[t]here is no indication that the novel coronavirus was ever actually present in or on Hillcrest's business premises." (Complaint, Doc. 1, ¶ 23.) But even if (contrary to fact and the Complaint) the coronavirus had been present on Plaintiff's premises, that would still be insufficient to plead and prove physical loss or damage. *See* Ex. A, *Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20 Civ. 3311 (VEC), Tr. at 4:25–5:4 (S.D.N.Y. May 14, 2020) (transcript of preliminary injunction hearing) (in action concerning alleged property damage caused by COVID-19, court stated at oral argument: "There is no damage to your property. . . . [COVID-19] damages lungs. It doesn't damage printing presses.").[6]

Based on existing Alabama case law, *Couch on Insurance*, and the majority position requiring some physical harm or alteration to the premises to trigger coverage under a policy insuring against direct physical loss or damage, the Alabama Supreme Court would likely adopt the majority position requiring

---

[5] For purposes of this motion, the Court may take this allegation as true. As previously set forth, however, the State Health Order did not require Plaintiff to have a "complete shut down." Any "complete shut down" by Hillcrest was voluntary.

[6] *See also CDC Reopening Guidance for Cleaning and Disinfecting Public Spaces, Workplaces, Businesses, Schools, and Homes*, cdc.gov/coronavirus/2019ncov/community/reopen-guidance.html (last visited June 14, 2020).

physical harm or alteration to the premises to trigger coverage.[7] The majority position is reflected in *Couch on Insurance* (*supra*), which the Alabama Supreme Court routinely cites with approval when analyzing insurance policies. *See, e.g., Somnus Mattress Corp. v. Hilson*, 280 So. 3d 373, 381 (Ala. 2018) (citing *Couch on Insurance*); *St. Paul Fire & Marine Ins. Co. v. Britt*, 203 So. 3d 804, 810 (Ala. 2016) (same); *Aderholt v. McDonald*, 226 So. 3d 648, 651 (Ala. 2016) (same).

The Complaint contains no allegations of "direct physical loss of or damage to" the insured property as that phrase would be interpreted by a reasonable person in the insured's position. Plaintiff alleges no "physical change" or "demonstrable harm" to property that could trigger coverage under the Policy. *MRI Healthcare Ctr. of Glendale*, 187 Cal. App. 4th at 778; *Newman Myers*, 17 F. Supp. 3d at 331. Rather, Plaintiff alleges only business income losses as a result of loss of use not

---

[7] We anticipate that Plaintiff may argue that this Court should certify to the Alabama Supreme Court how "direct physical loss of or damage to property" is interpreted under Alabama law. This request, if asserted, should be denied. The Alabama Supreme Court does not answer certified questions where, as here, "existing Alabama law is sufficient to guide the [certifying court]." *Heatherwood Holdings, LLC v. First Commercial Bank*, 61 So. 3d 1012, 1026 (Ala. 2010). Similarly, federal courts will decline to certify questions where "[t]he question is not close, and Alabama precedent is sufficient to allow a principled conclusion." *Arnold v. State Farm Fire & Cas. Co.*, Civ. No. 17-0148-WS-C, 2017 WL 5451749, at *5 (S.D. Ala. Nov. 11, 2017).

Certification is unnecessary because "[c]onstruing an insurance policy treads no new ground under Alabama law, and precedent determinative of such an analysis is well settled." *Stewart Title Guar. Co.* v. *Shelby Realty Holdings, LLC*, 83 So. 3d 469, 472 (Ala. 2011). Under Alabama law, the words used in an insurance policy must be given their common, everyday meaning and must be interpreted "'as a reasonable person in the insured's position would have understood them.'" *Travelers Cas. and Sur. Co.*, 117 So. 3d at 699. Thus, this Court can apply ordinary principles of contract interpretation in determining whether the Policy covers Plaintiff's alleged loss without any need for certification.

tied in any way to "a distinct, demonstrable, physical alteration of the property" required to establish "direct physical loss or damage." *MRI Healthcare Ctr. of Glendale*, 187 Cal. App. 4th at 778 (quoting 10A *Couch on Insurance* § 148:46). As such, the Complaint does not allege "direct physical loss of or damage to" Covered Property, the Complaint does not meet the Plaintiff's burden to establish coverage under the Policy, and the action, in its entirety, is due to be dismissed with prejudice.

> **B.   Plaintiff cannot circumvent the requirement of "direct physical loss of or damage to" property by alleging that the premises were rendered "physically unusable for their intended purpose."**

Plaintiff attempts to circumvent the requirement of a "direct physical loss of or damage to" property by alleging that the premises were rendered "physically unusable for their intended purpose" by the State Health Officer's Order. (Complaint, Doc. 1, ¶ 22.) However, the Order merely limited the type of business operations that could be performed on the premises. (Doc. 1-3.) The Order caused no physical changes to the property itself, and it is the property itself—rather than the usability thereof—that is insured under the Policy.[8]

> 1.   <u>Loss of Use Does Not Trigger Coverage Under the Businessowners Special Property Coverage Form or the Business and Income and Extra Expense Endorsement</u>

---

[8] The Business Income Loss and Extra Expense Endorsement does provide coverage for loss of business income as a result of suspended operations. (Doc. 1-2, p. 41.) However, this additional coverage is provided only where the suspension (and resulting lack of usability) was caused by direct physical loss of or damage to the property itself. (*Id.*)

Plaintiff's theory of recovery is inconsistent with the plain language of the Policy and unsupported by the caselaw. Although Plaintiff asserts in conclusory fashion that its premises were rendered "physically unusable" by the social distancing Order, the Order did no such thing.

Courts routinely reject commercial property insurance claims based on loss of use of the insured premises. Courts recognize that interpreting a policy that insures against "direct physical loss of or damage to" property to provide coverage when there is no attendant physical harm or physical impact to the property itself would render the term "physical" meaningless. *See Northeast Ga. Heart Ctr., P.C. v. Phoenix Ins. Co.*, No. 2:12-CV-00245-WCO, 2014 WL 12480022 (N.D. Ga. May 23, 2014) (holding that expanding "direct physical loss" to include loss-of-use damages when the property has not been physically impacted "would be equivalent to erasing the words 'direct' and 'physical' from the policy"); *Phoenix Ins. Co. v. Infogroup, Inc.*, 147 F. Supp. 3d 815, 825 (S.D. Iowa 2015) ("Indeed, interpretation of physical loss as requiring only loss of use stretches 'physical' beyond its ordinary meaning and may, in some cases, 'render the word "physical" meaningless.'").

The *Gavrilides* court rejected this very argument. (*See Gavrilides,* Case No. 20-258-CB-C30). Similar to Plaintiff's claim, the claim in *Gavrilides* was premised entirely on orders issued by the Government of the State of Michigan that

restricted customers' access to the insured's premises (a restaurant) and caused plaintiff to reduce operations. The court summarily rejected plaintiff's argument that it experienced a physical "loss of" property because customers were physically prohibited from dining in at plaintiff's restaurant, calling the argument "nonsense" and concluding that it came "nowhere close to meeting the requirement that there has to be some physical alteration to or physical damage or tangible damage to the integrity" of the property to trigger coverage. (*Id.*) The court also noted that "the first inquiry has to start with a full look not just isolating some words or phrases from the policy but a full look at the coverage that's provided under the policy." (*Id.*)

Similarly, in *Newman Myers Kreines Gross Harris P.C. v. Great N. Ins. Co.*, the court held that the closure of a law firm's premises resulting from a power shutoff by its energy provider in advance of Hurricane Sandy did not trigger business income or extra expense coverage, which required "direct physical loss or damage" to the firm's offices. 17 F. Supp. 3d at 332–33. The court noted as follows:

> The critical policy language here – "direct physical loss or damage" – **similarly, and unambiguously, requires some form of actual, physical damage to the insured premises to trigger loss of business income and extra expense coverage**. Newman Myers simply cannot show any such loss or damage to [its building] as a result of either (1) its inability to access its office . . . or (2) [the power company's] decision to shut off the power to the . .

. network. **The words "direct" and "physical," which modify the phrase "loss or damage," ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises** for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure. This authority undermines, and the Court is unaware of authority supporting, Newman Myers's argument that "direct physical loss or damage" should be read to include to extend [sic] to mere loss of use of a premises, where there has been no physical damage to such premises.

*Id.* at 331 (internal citations omitted) (emphasis added).

The Eighth Circuit Court of Appeals reached the same conclusion in *Pentair, Inc. v. Am. Guarantee & Liability Ins. Co.*, 400 F.3d 613 (8th Cir. 2005). Pentair sought coverage under its insurance policy when Pentair's suppliers were shut down after an earthquake disabled a substation. *Id.* at 614–15. Pentair argued that its suppliers' "inability to function after the loss of power constituted direct physical loss or damage." *Id.* at 616. The Eighth Circuit rejected this argument, stating, "Once physical loss or damage is established, loss of use or function is certainly relevant in determining the amount of loss, particularly a business interruption loss." *Id.* But, the court held, "Pentair's argument, if adopted, would mean that direct physical loss or damage is established *whenever* property cannot be used for its intended purpose," a position that the law does not support. *Id.*

Likewise, a Northern District of Georgia court held that a cardiology practice's inability to use the generator that maintained the solution required for

PET scans due to a manufacturer recall did not amount to "direct physical loss." *Northeast Ga. Heart Ctr., P.C. v. Phoenix Ins. Co.*, No. 2:12-CV-00245-WCO, 2014 WL 12480022 (N.D. Ga. May 23, 2014). The court stated that it would "not expand 'direct physical loss' to include loss-of-use damages when the property has not been physically impacted in some way. To do so would be equivalent to erasing the words 'direct' and 'physical' from the policy." *Id.* at *6. The law is no different elsewhere. *See, e.g.*, *Roundabout Theatre Co. v. Continental Casualty Co.*, 302 A.D.2d 1, at *8 (N.Y. Ct. App. 2002) (holding no direct physical loss of or damage to property under policy where theatre sustained no physical damage but was inaccessible after City closed the street following collapse of a nearby building); *J.O. Emmerich & Assocs., Inc. v. State Auto Ins. Cos.*, No. 3:06CV00722-DPJ-JCS, 2007 WL 9775576, at *5 (S.D. Miss. Nov. 19, 2007) (holding no "direct physical loss of or damage to" property under policy where insured loss access to computer data during power outage).

In sum, the business income and extra expense claims under the Policy language at issue here are compensable only when the suspension of business was caused by a physical alteration to, or a demonstrable change to, the insured's property. Because Plaintiff does not assert any such alteration or change to any property at its premises, its claim is not covered under the Policy.

2.   <u>Business Income and Extra Expense Coverage Is Unavailable Because There Is No Period of Restoration</u>

The Business Income and Extra Expense Endorsement coverage that Plaintiff seeks is also limited to those losses incurred during the "period of restoration." (Doc. 1-2 at p. 41.) This period "[b]egins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises;" and "[e]nds on the earlier of (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent location." (Doc. 1-2, p. 36.)

Here, there can be no "period of restoration" because there has been no direct physical loss or damage to Plaintiff's property necessitating that it be "repaired, rebuilt or replaced" or requiring that the business resume at a new location. Reading this definition in conjunction with the policy language requiring "direct physical loss," as this Court must, confirms that the Policy covers only business income losses that result from physical harm or physical change to the property that necessitates physical repair, rebuilding, or replacement in order for the insured to resume operations.

Insurance policies must be read as a whole and must be interpreted "'to give meaning and effect, if possible, to every word and phrase in the contract.'" *Am. Resources Ins. Co. v. H&H Stephens Constr., Inc.*, 939 So. 2d 868, 877 (Ala. 2006) (quoting J. Appleman, *Ins. Law & Practice* § 4909.85 at 452-53 (1981)). The court

"cannot adopt 'a construction which neutralizes any provision.'" *Id.*; *see Cowart v. GEICO Cas. Co.*, No. 1171126, 2019 WL 5485268, at *3 (Ala. Oct. 25, 2019) (holding that insurance policy must be read as a whole and each provision must be read in context with all other provisions). An interpretation of the Policy that would provide coverage for lost business income where the property has not been physically affected and there has been no repair, rebuilding or replacement would not give effect to the definition of "period of restoration" and, therefore, must be rejected. *See H&H Stephens Constr., Inc.*, 939 So. 2d at 877 (holding that policy must be interpreted "to give meaning and effect, if possible, to every word and phrase in the contract"); *Harry's Cadillac-Pontiac-GMC Truck Co. v. Motors Ins. Co.*, 486 S.E.2d 249, 250 (N.C. Ct. App. 1997) (holding that business interruption clause does not cover all business interruption losses, but only those losses requiring repair, rebuilding, or replacement); *Newman Myers*, 17 F. Supp. 3d at 330 (noting that the words "repair" and "replace" in the definition of "period of restoration" contemplate physical damage to the insured's premises as opposed to the loss of use of it and holding that construing "direct physical loss or damage" to require actual, physical damage to the premises gives effect to all provisions of the policy).

        3.    <u>Plaintiff Cannot Recover Under the Civil Authority Endorsement</u>

Finally, Plaintiff's failure to even seek coverage under the Civil Authority Endorsement, further demonstrates the lack of coverage under the Policy. The Civil Authority Endorsement supplements the Businessowners Special Property Coverage Form and Business Income and Extra Expense Coverage Endorsement by extending coverage to loss of business income "caused by action of civil authority that prohibits access to the described premises." (Doc. 1-2, p. 67.) As a threshold matter, to trigger coverage under this Endorsement, the civil authority action must be "due to direct physical loss of or damage to property at locations other than the described premises, caused by or resulting from a covered cause of loss." (*Id.*) Plaintiff's "loss of use" argument is a transparent attempt to gain the same coverage offered by this Endorsement while sidestepping its physical loss or damage requirement. This effort should be rejected. One can surmise that Plaintiff fails to seek coverage under this Endorsement because Plaintiff (correctly) recognizes that it cannot satisfy its coverage requirements.

First, this endorsement applies only to civil authority actions that "prohibit access" to the insured premises. (*Id.*) The Order did not "prohibit access" to Plaintiff's premises; it merely limited the medical procedures that could be performed at the premises. (Complaint, Doc. 1, ¶ 17; Doc. 1-3, p. 6.) Under the language of the Order, both employees and patients could access the premises, and Plaintiff was free to conduct business at the premises so long as it did not involve

performing non-emergency medical procedures. (Doc. 1-3, p. 6.) Moreover, the Order specifically permitted Plaintiff to perform medical procedures that were necessary to treat an emergency medical condition, necessary to avoid serious harm from an underlying condition or disease, or necessary as part of a patient's ongoing and active treatment. (*Id.*) The law is clear that access must be completely prohibited to trigger civil authority coverage. *See, e.g.*, *Southern Hospitality, Inc. v. Zurich Am. Ins.*, 393 F.3d 1137, 1140 (10th Cir. 2004) (stating that to "prohibit access" means to "formally forbid" or "prevent" access and holding that FAA orders grounding flights did not prohibit access to airport hotels). When access to the insured's property is merely hampered or discouraged, civil authority coverage does not apply. *See Ski Shawnee, Inc.* v. *Commonwealth Ins. Co.*, No. 3:09-CV-02391, 2010 WL 2696782, at *1, *5 (M.D. Pa. July 6, 2010) (no coverage when order closed main road that 70 percent—but not 100 percent—of patrons used to access ski resort).

Second, the Civil Authority Endorsement specifically provides that the civil authority action "must be due to direct physical loss of or damage to property at locations, other than the described premises." (Doc. 1-2, p. 67.) Plaintiff does not allege that the State Health Officer issued the Order due to "direct physical loss of or damage to property." Courts interpreting similar civil authority provisions have held that plaintiffs must provide "proof of a causal link between prior damage and

civil authority action." *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 687 (5th Cir. 2011); *see also Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, No. 1:03-CV-3154-JEC, 2004 WL 5704715, at *7 (N.D. Ga. Dec, 15, 2004) (finding no coverage under civil authority provision where the order issued after the September 11 attacks was issued as a result of the threat of "additional terrorist acts" and not due to existing property damage); *see also South Texas Med. Clinics, P.A. v. CNA Fin. Corp.*, Civ. A. No. H-06-4041, 2008 WL 450012, at *8 (S.D. Tex. Feb. 15, 2008) (civil authority coverage requires a "close causal link" between property damage and civil authority order). Additionally, the Order does not make *any* reference to direct physical loss of or damage to property at a location other than the insured's premises, as needed to trigger coverage.

The existence of an additional, optional coverage for business income losses due to civil authority action belies Plaintiff's position that *any* governmental order restricting business operations on the insured premises constitutes "direct physical loss" covered by the Business Income and Extra Expense Coverage Endorsement. If this were the case, the additional Civil Authority coverage would serve no purpose. Such an interpretation is inconsistent with Alabama law. *Royal Ins. Co. of Am. v. Thomas*, 879 So. 2d 1144, 1154 (Ala. 2003) (requiring insurance policies be interpreted to give effect to all provisions).

## II.   COUNT I OF PLAINTIFF'S COMPLAINT SEEKING A DECLARATORY JUDGMENT FAILS AS A MATTER OF LAW AND IS DUE TO BE DISMISSED.

As discussed above, all of Plaintiff's claims are due to be dismissed because Plaintiff failed to allege the direct physical loss or damage required to trigger coverage. Plaintiff's Declaratory Judgment claim (Count I) is due to be dismissed for the additional reason that this Count seeks the same relief as the breach of contract claim asserted in Count II and, therefore is duplicative. *Remedios v. Nat'l Fire & Marine Ins. Co.*, No. 1:19-CV-21559-KMM, 2019 WL 7956170, at *4 (S.D. Fla. Aug. 29, 2019) (holding that a "court must dismiss a claim for declaratory judgment if it is duplicative of a claim for breach of contract, and, in effect, seeks adjudication on the merits of a breach of contract claim"). Moreover, the breach of contract claim would, if successful, provide Plaintiff with money damages, which constitutes an adequate remedy at law, thereby precluding a claim for Declaratory Judgment. *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000) (holding that in order to receive declaratory relief, plaintiff must establish *inter alia* "the absence of an adequate remedy at law").

## III.   BECAUSE PLAINTIFF'S INDIVIDUAL CLAIMS FAIL, THE ENTIRE ACTION MUST BE DISMISSED.

Plaintiff seeks to assert claims on behalf of a proposed class of business owners in the state who suffered business income losses as a result of the State Health Officer's March 27, 2020 Order and have unsuccessfully sought coverage from Continental under the Businessowners Special Property Coverage Form and the Business Income and Extra Expense Endorsement. (Complaint, Doc. 1, ¶ 26.)

These claims cannot survive the dismissal of Plaintiff's individual claims and, therefore, are also due to be dismissed. *See Am. Chemicals & Equip., Inc. v. Cont'l Cas. Co.*, No. 6:15-CV-00299-MHH, 2017 WL 2405102, at *8 (N.D. Ala. June 2, 2017) (striking class claims where allegations were premised on a misinterpretation of the policy); *Bass v. Butler*, 116 F. App'x 376, 385 (3d Cir. 2004) ("Because no class has been certified here, if [named plaintiff's] claim fails, the entire action must be dismissed."); *Przedwojewski v. NHS Management, LLC*, No. 7:11-CV-2114-LSC, 2012 WL 12895655, at *1 n.1 (N.D. Ala. Feb. 17, 2012) (dismissing class claims where individual claims failed to state a cause of action). The same result is appropriate here. Plaintiff has failed to allege a viable claim sufficient to overcome a motion to dismiss. Because Plaintiff's class allegations are premised on its legally deficient coverage claims, Plaintiff's class allegations must also be dismissed.

## CONCLUSION

For these reasons, Defendant Continental Casualty Company respectfully requests that the Court dismiss with prejudice all of the claims asserted by the Plaintiff in the Class Action Complaint.

*/s/ M. Warren Butler*

M. WARREN BUTLER (BUTLM3190)
ALEX TERRY WOOD (TERRA6130)
Starnes Davis Florie LLP
11 North Water Street, Suite 20290
Mobile, AL 36602
Phone: (251) 433-6049
Fax: (251) 433-5901
*wbutler@starneslaw.com*
*atw@starneslaw.com*


JAY EZELLE (ASB-4744-Z72J)
MICHAEL A. FLORIE (ASB-7456-I53M)
SCOTT SALTER (ASB-7168-R57S)
STARNES DAVIS FLORIE LLP
100 Brookwood Place, 7th Floor
Birmingham, AL 35209
Telephone: (205) 868-6000
Facsimile: (205) 868-6099
*jezelle@starneslaw.com*
*mflorie@starneslaw.com*
*ssalter@starneslaw.com*

**Attorneys for Defendant
Continental Casualty Company**

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have served a copy of the foregoing on the following parties or attorneys of record by filing same with the Clerk of Court via CM/ECF or by U. S. MAIL, postage prepaid, this the 9th day of July, 2020:

Richard H. Taylor, Esq.
W. Lloyd Copeland, Esq.
Steven A. Martino, Esq.
Taylor Martino, PC
P.O. Box 894
Mobile, Alabama 36601

John W. "Don" Barrett
BARRETT LAW GROUP, P.A.
404 Court Square North
Lexington, Mississippi

*/s/ M. Warren Butler*
M. WARREN BUTLER (BUTLM3190)