# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **HILLCREST OPTICAL, INC., a corporation, on behalf of itself and all others in the State of Alabama similarly situated,** | * | |
| | * | |
| | * | **CIVIL ACTION NO.:** |
| **Plaintiffs,** | | **1:20-CV-275-JB-N** |
| | * | |
| **v.** | * | |
| **CONTINENTAL CASUALTY COMPANY,** | * | |
| **Defendant.** | * | |

## CONTINENTAL CASUALTY COMPANY'S
## REPLY IN SUPPORT OF ITS MOTION TO DISMISS

{B3572409}

## **TABLE OF CONTENTS**

TABLE OF CONTENTS................................................................................................ ii

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ........................................................................................................1

ARGUMENT ................................................................................................................3

I.   PLAINTIFF'S COMPLAINT DOES NOT ALLEGE "DIRECT PHYSICAL
     LOSS OF OR DAMAGE TO PROPERTY" AS REQUIRED TO TRIGGER
     COVERAGE UNDER THE POLICY ........................................................................3

     A.   Plaintiff fails to allege either "Direct Physical Loss of
          Property" or "Direct Physical Damage to Property" ..........................4

     B.   Plaintiff's "loss of use for intended purpose" argument
          lacks legal support ................................................................................6

     C.   Plaintiff's position renders portions of the Policy superfluous...........11

II.  PLAINTIFF'S REQUEST FOR CERTIFICATION TO THE ALABAMA SUPREME
     COURT SHOULD BE REJECTED ........................................................................14

CONCLUSION ...........................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Resources Ins. Co. v. H&H Stephens Constr., Inc.*, 939 So. 2d
    868 (Ala. 2006)...............................................................................3, 11

*Arnold v. State Farm Fire & Cas. Co.*, 2017 WL 5451749 (S.D. Ala.
    Nov. 14, 2017)........................................................................... 14, 15

*Clarendon Nat. Ins. Co. v. Muller*, 237 F. App'x 451 (11th Cir. 2007).................15

*Cont'l Cas. Co. v. Ala. Emergency Room Admin. Servs., P.C.*,
    623 F. Supp. 2d 1290 (M.D. Ala.) ....................................................13

*Cowart v. Geico Cas. Co.*, 2019 WL 5485268 (Ala. Oct. 25, 2019).......................11

*Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE
    (W.D. Tex. Aug. 13, 2020) ..............................................................3, 11

*Farmers Ins. Co. of Oregon v. Trutanich*, 858 P.2d 1332
    (Or. Ct. App. 1993) .........................................................................7

*Gavrilides Mgmt. Co. v. Mich. Ins. Co.*, Case No. 20-258-CB-C30
    (Mich. Cir. Ct. July 1, 2020) .........................................................2, 10

*Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*,
    2014 WL 6675934 (D.N.J. Nov. 25, 2014).............................................8

*Harry's Cadillac-Pontiac-GMC Truck Co. v. Motors Ins. Co.*,
    486 S.E.2d 249 (N.C. Ct. App. 1997) .................................................12

*Hughes v. Potomac Ins. Co.*, 18 Cal. Rptr. 650 (Cal. App. 1962)............................8

*J.O. Emmerich & Assocs., Inc. v. State Auto Ins. Companies*,
    2007 WL 9775576 (S.D. Miss. Nov. 19, 2017).....................................6

*Mellin v. No. Sec. Ins. Co., Inc.*, 115 A.3d 799 (N.H. 2015)....................................8

*Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1 (W. Va. 1998).......................7

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*,
    17 F. Supp. 3d 323 (S.D.N.Y. 2014)..................................................12

*Northeast Ga. Heart Ctr., P.C. v. Phoenix Ins. Co.*, 2014 WL
   12480022 (N.D. Ga. May 23, 2014) ....................................................................6

*Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 2003 WL 21804874
   (D. Minn. July 31, 2003) ....................................................................................6

*Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 400 F.3d 613
   (8th Cir. 2005) ....................................................................................................6

*Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280
   (S.D.N.Y. 2005) ................................................................................................12

*Prime All. Grp., Ltd. v. Hartford Fire Ins. Co.*, 2007 WL 9703576
   (S.D. Fla. Oct. 19, 2007) ...................................................................................9

*Public Bldg. Auth. of Huntsville v. St. Paul Fire & Marine Ins. Co.*,
   80 So.3d 171 (Ala.2010) ..................................................................................14

*Rose's 1, LLC v. Erie Ins. Exch.*, Civil Case No. 2020 CA 002424 B
   (D.C. Super. Ct. Aug. 6, 2020) ............................................................... 2, 10, 11

*Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140 (Ala. 2005) ...................3

*Safeway Ins. Co. of Ala., Inc. v. Thomas*, 264 So. 3d 98
   (Ala. Civ. App. 2018) .........................................................................................3

*Sentinel Mgt. v. N.H. Ins. Co.*, 563 N.W.2d 296 (Minn. App. Ct. 1997) .................7

*Social Life Magazine, Inc. v. Sentinel Ins. Co., Ltd.*, No. 20 Civ. 3311
   (S.D.N.Y. May 14, 2020) ...................................................................................2

*Source Food Tech Inc. v. U.S. Fid. & Guar. Co.*, 465 F.3d 834
   (8th Cir. 2006) ....................................................................................................9

*State Farm Mutual Automobile Insurance Co. v. Rodriguez*,
   987 N.E.2d 896 (Ill. App. Ct. 2013) ..................................................................5

*Stewart Title Guar. Co. v. Shelby Realty Holdings, LLC*, 83 So. 3d 469
   (Ala. 2011) ................................................................................................ 14, 15

*The Dunes of GP, LLC v. Bradford*, 966 So. 2d 924 (Ala. 2007) ..........................13

iv

*Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*,
  2018 WL 3829767 (C.D. Cal. July 11, 2018) ........................................................5

*Trailer Bridge, Inc. v. Illinois Nat. Ins. Co.*, 657 F.3d 1135
  (11th Cir. 2011) ........................................................................................15

*TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699 (E.D. Va. 2010) ...........................8

*Western Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52
  (Colo. 1968) .................................................................................. 7, 8, 9

## INTRODUCTION

The Policy issued to Hillcrest Optical, Inc. is a commercial property insurance policy. By its terms, coverage is predicated on "direct physical . . . damage to" or "direct physical loss of" property at the insured premises. (Doc. 1-2, p. 19.) The Business Income and Extra Expense Endorsement to the Policy pursuant to which Plaintiff seeks coverage for lost business income provides coverage only where business operations are suspended due to "direct physical loss of or damage to property" at the insured premises. (Doc. 1-2, p. 41.) Thus, the risk underwritten by Continental is the risk that the insured property may be lost or damaged. The Policy does not insure against economic losses that are wholly unrelated to the condition of the insured premises.

As demonstrated in Continental's Memorandum of Law, the allegations of Plaintiff's Complaint are insufficient to trigger coverage under the Policy. Plaintiff does not claim that any property was physically lost. The Complaint contains no allegations that any property was stolen, carried away by a windstorm, misplaced, or otherwise removed from Plaintiff's possession. Nor does Plaintiff claim that any property was damaged. Rather, Plaintiff claims it "suffered a direct physical loss of its business premises because its business premises were rendered physically unusable for their intended purpose." (Doc. 24, p. 2.) Although Plaintiff utters the phrase "*physically unusable*" to describe the circumstances resulting from the issuance of the public health order, in which Plaintiff was limited in the types of medical procedures it could perform at its business premises, there was no *physical* impact whatsoever to the insured premises or personal property. The insured premises remained physically the same before and after

{B3572409}                                            1

entry of the Order. Rather, Plaintiff's premises were, at best, rendered "*legally* unusable" for certain purposes as a result of the Order, a risk not insured by the Policy.

Plaintiff's attempt to conflate "loss of use" with "direct physical loss of property" is unsupported by legal authority and is contrary to recent rulings by courts addressing similar COVID-19 insurance claims. *See Gavrilides Mgmt. Co. v. Mich. Ins. Co.*, Case No. 20-258-CB-C30 (Mich. Cir. Ct. July 1, 2020) (transcript of July 1, 2020 hearing, pp. 18-20, 23) (holding no direct physical loss or damage as a result of "stay at home" orders entered in response to COVID-19 pandemic and entering summary judgment in favor of insurer) (transcript and order attached hereto as Exhibit A); *Social Life Magazine, Inc. v. Sentinel Ins. Co., Ltd.*, No. 20 Civ. 3311 (S.D.N.Y. May 14, 2020) (transcript of preliminary injunction hearing) (noting that the COVID-19 virus "damages lungs," not property, and acknowledging that "loss of use from things like mold is different from you not being able to . . . use your premises because there is a virus that is running amuck in the community"). Plaintiff's failure to address these rulings is telling; by its silence, Plaintiff effectively concedes that the reasoning of these courts is correct. Indeed, since Plaintiff filed its response, two more courts have rejected this loss of use argument. *See* Order, *Rose's 1, LLC v. Erie Ins. Exch.*, Civil Case No. 2020 CA 002424 B, at 5 (D.C. Super. Ct. Aug. 6, 2020) (attached hereto as Exhibit B) (holding that "'loss of use' must be caused without the intervention of other persons or conditions, by something pertaining to matter—in other words, a direct physical intrusion on to the insured property," and that "[the public health] orders were not such a direct physical intrusion");

*Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE (W.D. Tex. Aug. 13, 2020) (attached hereto as Exhibit C) (dismissing insureds' "loss of use" claim based on holding that direct physical loss requires a "distinct, demonstrable physical alteration of the property.").

Moreover, despite Plaintiff's attempt to avoid a decision by this Court on the coverage issue by seeking certification to the Alabama Supreme Court, well-settled principles of Alabama law provide a clear framework for this Court to address the coverage issue in favor of Continental. Plaintiff's interpretation of the Policy language is contrary to well-settled principles of Alabama insurance law requiring that courts give policy terms the meaning that "a reasonably prudent person applying for insurance would have understood the term[s] to mean," *Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140, 1144 (Ala. 2005), and requiring courts "to give meaning and effect, if possible, to every word and phrase in the contract." *Am. Resources Ins. Co. v. H&H Stephens Constr., Inc.*, 939 So. 2d 868, 877 (Ala. 2006). Plaintiff's interpretation would require that the Court "rewrite [the] polic[y] to provide coverage not intended by the parties," *Safeway Ins. Co. of Ala., Inc. v. Thomas*, 264 So. 3d 98, 101 (Ala. Civ. App. 2018), and require the Court to reach a result unsupported by any legal authority. For these reasons, the Court should dismiss the Complaint.

## ARGUMENT

**I.     PLAINTIFF'S COMPLAINT DOES NOT ALLEGE "DIRECT PHYSICAL LOSS OF OR DAMAGE TO PROPERTY" AS REQUIRED TO TRIGGER COVERAGE UNDER THE POLICY**

### A.  Plaintiff fails to allege either "Direct Physical Loss of Property" or "Direct Physical Damage to Property"

Continental does not dispute that the use of the word "or" in the phrase "direct physical loss of or damage to property" creates two alternatives by which Hillcrest could establish coverage. Specifically, coverage under the Business Income and Extra Expense Endorsement is triggered by "direct physical loss of . . . property at the described premises" or, alternatively, by "direct physical . . . damage to property at the described premises." (Doc. 1-2, p. 41.) The distinction may be demonstrated by reference to two common types of property insurance claims: theft and fire. If Plaintiff's eye examination equipment were stolen, then the theft would constitute a direct physical loss of property. If the equipment were damaged by fire, then this would constitute direct physical damage to property. Plaintiff concedes, however, that no physical damage to property occurred and the Complaint fails to allege a legally cognizable claim for direct physical loss of property.[1]

Instead, Plaintiff attempts to force "loss of use" of its premises as a result of the state health Order within the policy language of "direct physical loss of . . . property."

---

[1] In Plaintiff's Response to Defendant's Motion to Dismiss, Plaintiff states, "Hillcrest does not make a claim for property damage—Hillcrest's business-income claim is based on physical loss of property." (Doc. 24, p. 10.)

Plaintiff also makes several claims evincing its misreading of the Policy and misunderstanding of the coverage provided therein. First, Plaintiff curiously claims, without citation, that "'Common sense tells us that 'property at the described premises' includes the premises themselves." (Doc. 24, p. 5.) Yet, this statement is plainly at odds with Plaintiff's own acknowledgment that the Policy does not cover loss of or damage to the Building because Hillcrest is a renter. (Doc. 24, p. 5 n.4.) Next, Plaintiff seeks to explain away this inconsistency by arguing (again without any legal support) that "the word 'covered' is unnecessary" and "should be disregarded as surplusage." (*Id.*) Plaintiff may not read out terms of the Policy it finds unhelpful to its strained argument. Indeed, it is unsurprising that the Policy's language is inconsistent with Plaintiff's own reading, as the Policy was not intended to cover claims such as those asserted by Plaintiff.

This effort to force a square peg into a round hole is wrong as a matter of law and would read into the policy words that are not there. As in the theft scenario described above, a "direct physical loss of property" occurs when the subject property is no longer in the possession of the insured. Here, Plaintiff does not claim that it has lost possession of any property. Rather, Plaintiff asserts a claim for a purely economic loss resulting from an inability to use its property for a certain purpose. Courts throughout the country have firmly and uniformly rejected "loss of use" claims that are not in any way tied to physical impact to or loss of possession of the insured property.

Plaintiff cites *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, 2018 WL 3829767 (C.D. Cal. July 11, 2018), for the proposition that policy language covering "loss to property" has a different meaning than policy language covering "loss of property." (Doc. 24, pp. 7-8.) Notwithstanding this distinction, the *Total Intermodal* decision does not support Plaintiff's interpretation of the Policy language. There, the court held that "loss of" property means that "the property is misplaced and unrecoverable" and includes "the permanent dispossession of something." *Total Intermodal*, 2018 WL 3829767, at *3–4. Under the facts pled in the Complaint, Plaintiff's claim does not meet the standard set forth in *Total Intermodal*. Plaintiff does not allege that any property was misplaced or unrecoverable. None of Plaintiff's property was stolen, misplaced, carried away by wind, or otherwise physically lost. Plaintiff's premises remained in precisely the same physical condition and remained in Plaintiff's exclusive possession, just as it was prior to entry of the Order. Moreover, Plaintiff

retained full access to the premises and its business personal property contained therein throughout the pendency of the Order. Plaintiff has not cited even one case in which a court has held that a temporary limitation on the types of activities that may occur on the insured premises constituted a "direct physical loss of property."[2]

**B.    Plaintiff's "loss of use for intended purpose" argument lacks legal support**

Recognizing that no physical loss of property has occurred—as by theft, windstorm, or otherwise—Plaintiff seeks to read into the Policy coverage for "loss of use" of the premises for its intended purpose. Plaintiff's position is not supported by any relevant legal authority. Courts have held that property insurance policies with identical operative language to Plaintiff's Policy do not cover purely economic claims for loss of use of property that has not been physically lost or physically damaged. *See Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 400 F.3d 613, 616 (8th Cir. 2005)*; Northeast Ga. Heart Ctr., P.C. v. Phoenix Ins. Co.*, 2014 WL 12480022, at *6 (N.D. Ga. May 23, 2014); *J.O. Emmerich & Assocs., Inc. v. State Auto Ins. Companies*, 2007 WL 9775576, at *5 (S.D. Miss. Nov. 19, 2017). Hillcrest fails to discuss, much less convincingly distinguish, these cases.

For example, in *Pentair, Inc.*, the court rejected the insured's claim for coverage for losses resulting from a shutdown of manufacturing operations due to loss of power

---

[2] Plaintiff also cites to *State Farm Mutual Automobile Insurance Co. v. Rodriguez*, 987 N.E.2d 896, 900–01 (Ill. App. Ct. 2013). *Rodriguez*, however, is also inapplicable as the court held that the seizure of stolen vehicles by law enforcement was not covered by automobile insurance policies that only covered damage or theft. Moreover, a permanently seized vehicle is plainly distinguishable from an Order temporarily precluding a business from performing certain medical procedures, as here.

when there was no physical impact to the property. 400 F.3d 613, 616 (8th Cir. 2015).[3]
The *Pentair* court noted that adoption of the insured's position "would mean that direct
physical loss or damage is established whenever property cannot be used for its intended
purpose"—a position that the court squarely rejected. *Id.* The *Pentair* court flatly rejected
the exact same "loss of use for its intended purpose" argument that Hillcrest is making in
this case.

      Moreover, to the extent that Hillcrest suffered any "loss of use," such loss was the
sole result of the public health order, rather than any physical impact at the premises.
The cases cited by Plaintiff in support of its "loss of use" theory are, therefore, easily
distinguishable because in each of these cases there was some form of physical impact or
physical manifestation at the insured premises that the insured claimed rendered the
premises unusable or uninhabitable. *See Western Fire Ins. Co. v. First Presbyterian
Church*, 437 P.2d 52 (Colo. 1968) (gasoline had accumulated in the soil around the
insured building, infiltrating and saturating the foundation and making the structure
uninhabitable); *Sentinel Mgt. v. N.H. Ins. Co.*, 563 N.W.2d 296, 300 (Minn. App. Ct.
1997) (insured building was physically impacted and rendered "useless" by the release of
asbestos fibers, causing "loss to" property); *Farmers Ins. Co. of Oregon v. Trutanich*, 858
P.2d 1332, 1335 (Or. Ct. App. 1993) (court held that pervasive odor caused by "cooking"
of methamphetamine in insured house under a homeowner's insurance policy "was
'physical,' because it damaged the house" and caused "loss to" property; "the house was

---

[3] The policy language is cited in the district court opinion, which was affirmed by the Eighth Circuit Court
of Appeals. *Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 2003 WL 21804874, at *2 (D. Minn. July 31, 2003),
*aff'd* 400 F.3d 613 (8th Cir. 2005).

physically damaged by the odor that persisted in it"); *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1, 16–17 (W. Va. 1998) (holding under a homeowner's insurance policy that risk of additional rockfalls from 50-foot highwall adjacent to home "suffered real damage when it became clear that rocks and boulders could come crashing down at any time," was "unsafe for habitation," and thus caused "loss to the property"); *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, 2014 WL 6675934 (D.N.J. Nov. 25, 2014) (holding that "ammonia release physically transformed the air within [the] facility . . . [and] rendered the facility unfit for occupancy"); *TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 708–09 (E.D. Va. 2010) (concluding under a policy that defined "Property Damage" to include "loss of use of tangible property" that insured's "home has been rendered uninhabitable by the toxic gases released by the Chinese Drywall," and that the toxic gases caused "loss to property"); *Hughes v. Potomac Ins. Co.*, 18 Cal. Rptr. 650 (Cal. App. 1962) (holding that home "suffered real and severe damage when the soil beneath it slid away and left it overhanging a 30-foot cliff" thereby causing "loss to" the dwelling); *Mellin v. No. Sec. Ins. Co., Inc.*, 115 A.3d 799, 803, 805 (N.H. 2015) (toxic odor from cat urine potentially constituted "direct," "physical loss to property" if the insured could establish "a *distinct and demonstrable alteration* of the insured property") (emphasis added).

Each case cited by the Plaintiff involved a physical impact to the insured property, and none support the pure economic loss argument put forth by Plaintiff. In other words, each case involved a situation in which "the building in question has been rendered

unusable by physical forces." *Ward*, 715 F. Supp. 2d at 708. In *Western Fire Ins. Co. v. First Presbyterian Church*, cited by the Plaintiff in support of its coverage position, the Court specifically recognized that "[i]t is perhaps quite true that the so-called 'loss of use' of the church premises, standing alone, does not in and of itself constitute a 'direct physical loss.'" 437 P.2d at 55. Rather, it was the physical impact or physical manifestation of the gasoline that accumulated around and under the insured building that resulted in the Court finding a "direct physical loss." *Id.* The other cases cited by Plaintiff are in accord.

Plaintiff alleges no physical impact or physical manifestation and, as previously cited, concedes this point. The Order, which limited the medical procedures that could be performed at the insured premises, had no physical impact on the insured premises and cannot itself supply the basis for coverage under the Policy absent some distinct physical loss or damage. *See Prime All. Grp., Ltd. v. Hartford Fire Ins. Co.*, 2007 WL 9703576, at *4 (S.D. Fla. Oct. 19, 2007) (an "order of civil authority cannot in any manner be construed as a 'peril'" under the all-risk policy). The Order did not render the insured premises either uninhabitable or unusable; it merely restricted the types of procedures that could be performed. *See Source Food Tech Inc. v. U.S. Fid. & Guar. Co.*, 465 F.3d 834, 837 (8th Cir. 2006) (noting that coverage was found to be triggered in the *Sentinel Management* case "by actual physical contamination of insured property"). Both employees and patients of Hillcrest could physically access the insured premises under the Order and certain medical procedures could continue to be performed; the premises

were not rendered uninhabitable or unusable. Plaintiff's contrary argument—that its "staff and patients are 'material things,' 'real, tangible objects'" that are insured under the Policy (Doc. 24, p. 10.)—is unavailing. It is Plaintiff's business personal property that is covered under the Policy, not its staff and patients.

Plaintiff's position is further diminished by recent Orders entered in analogous cases filed throughout the country seeking insurance coverage as a result of public health orders entered in response to the COVID-19 pandemic. Continental previously cited the decision of a Michigan state court entering summary judgment in favor of the defendant on grounds that there was no direct physical loss or damage sufficient to trigger property insurance coverage as a result of "stay at home" orders entered in response to COVID-19 pandemic. *Gavrilides Mgmt. Co. v. Mich. Ins. Co.*, Case No. 20-258-CB-C30 (Mich. Cir. Ct. July 1, 2020) (hearing transcript, pp. 18-20, 23). (Doc. 18, pp. 21-22.) Plaintiff has made no attempt to distinguish this case. More recently, two additional courts reached the same conclusion. First, in entering summary judgment in favor of the defendant insurer, the D.C. Superior Court in *Rose's 1, LLC v. Erie Insurance Exchange*, Civil Case No. 2020 CA 002424 B (D.C. Superior Court Aug. 6, 2020), rejected the same arguments made by Hillcrest regarding "loss of use" as a result of public health orders.  That court stated,

> [U]nder a natural reading of the term "direct physical loss," the words "direct" and "physical" modify the word "loss." As such . . . any "loss of use" must be caused, without the intervention of other persons or conditions, by something pertaining to matter—in other words, a direct physical

> intrusion on to the insured property. [The public health]
> orders were not such a direct physical intrusion.

*Id.* at 5. The court further noted that the insured could cite no case "stand[ing] for the proposition that a government edict, standing alone, constitutes a direct physical loss under an insurance policy." *Id.* Hillcrest's arguments suffer from the same deficiencies. Second, in *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE (W.D. Tex. Aug. 13, 2020), the U.S. District Court for the Western District of Texas also rejected the insureds' "loss of use" claims based on public health orders restricting usage of the insured properties, holding that direct physical loss requires a "distinct, demonstrable physical alteration of the property." Because the insureds failed to plead a direct physical loss, the court dismissed the insureds' claims.

In sum, had the parties intended for the Policy to cover "loss of use"—which contemplates purely economic losses—rather than "direct physical loss of property"—which does not—they would have included such a provision in the contract. They did not, and Plaintiff cannot now seek coverage not otherwise provided (or bargained) for in its Policy.

**C.    Plaintiff's position renders portions of the Policy superfluous**

As discussed in Continental's Memorandum of Law, Alabama law is clear that policy provisions "cannot be read in isolation . . . each provision must be read in context with all other provisions." *Cowart v. Geico Cas. Co.*, 2019 WL 5485268, at *2 (Ala. Oct. 25, 2019) (citations omitted). Insurance policies must be interpreted "to give meaning and effect, if possible, to every word and phrase in the contract." *Am. Resources Ins. Co. v.*

*H&H Stephens Constr., Inc.*, 939 So. 2d 868, 877 (Ala. 2006) (citations omitted). Plaintiff's proposed interpretation of the Policy, however, would require this Court to ignore the provision of the Policy limiting business income coverage to the "period of restoration." (Doc. 1-2 at p. 41.)

The "period of restoration" is defined as the period beginning on the date of direct physical loss or damage and ending on the earlier of the date that the property should be "repaired, rebuilt or replaced with reasonable speed and similar quality" or the date when the business "is resumed at a new permanent location." (Doc. 1-2, p. 36.) Courts have uniformly held that the words "repair" and "replace" in the definition of the "period of restoration" "contemplate physical damage to the insured premises as opposed to loss of use of it." *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 332 (S.D.N.Y. 2014); *see also Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005) (holding that "rebuild," "repair," and "replace" all "strongly suggest that the damage contemplated by the policy is physical in nature"); *Harry's Cadillac-Pontiac-GMC Truck Co. v. Motors Ins. Co.*, 486 S.E.2d 249, 251 (N.C. Ct. App. 1997) (same). Plaintiff claims that the definition of the word "repair" includes "to restore to a sound or healthy state." (Doc. 24, p. 15) Plaintiff claims, without citation to any legal authority and read in isolation of the relevant policy provision, that "[t]he usability of Hillcrest's premises was most certainly not in a sound state, because Hillcrest could not use its premises for their intended purpose at all" and that the "sound state" was restored when the Order was lifted. (Doc. 24, p. 15.)

First, Plaintiff's argument fails because there was never any change in the "state" of the insured premises. The premises remained in the same "state" or condition throughout the pendency of the Order. Second, Plaintiff's interpretation is directly contrary to the legal authority cited above, which rely on the common meaning of the word "repair." If there is no damaged property to be repaired or rebuilt or lost property to be replaced, there is no "period of restoration" under the Policy.

Similarly, the interpretation of "direct physical loss of property" would render the Policy's Civil Authority provision meaningless. Such a construction would be erroneous under Alabama law. *Cont'l Cas. Co. v. Ala. Emergency Room Admin. Servs., P.C.*, 623 F. Supp. 2d 1290, 1294 (M.D. Ala.), *aff'd*, 355 F. App'x 332 (11th Cir. 2009) (holding that the court must interpret an insurance policy "to give effect to all terms and provisions"); *The Dunes of GP, LLC v. Bradford*, 966 So. 2d 924, 928 (Ala. 2007) (stating that "in construing a contract, we must give effect and meaning to all its terms and provisions, wherever possible").

Plaintiff's response to this argument—that "Civil Authority coverage is simply how the insurer has chosen to deal with the fire-down-the-street situation" —ignores the purpose of the Civil Authority endorsement, which is to provide Civil Authority coverage only under a specific scenario in which access to insured property is prohibited by a governmental order entered as a result of property loss or damage at another premises. Thus, under the Policy, Civil Authority coverage is triggered only by governmental orders entered under these specific circumstances. If, as Plaintiff suggests, *any*

governmental order resulting in a loss of use of the premises triggers business income coverage, there would be no need for a separate, specific provision providing coverage for losses resulting from a subset of governmental orders. As such, Plaintiff has not proffered a valid argument or cited any legal authority to oppose Continental's position.

## II.   PLAINTIFF'S REQUEST FOR CERTIFICATION TO THE ALABAMA SUPREME COURT SHOULD BE REJECTED

Recognizing the weakness of its position, Plaintiff seeks to avoid the immediate end of its case by requesting that this Court certify a question regarding the meaning of the language "direct physical loss of or damage to property" to the Alabama Supreme Court. (Doc. 24, p. 5.) Plaintiff's request for certification should be denied. In determining whether to exercise discretion in favor of certification, federal courts consider both the "closeness of the question" and "the existence of sufficient sources of state law . . . to allow a principled rather than conjectural conclusion." *Arnold v. State Farm Fire & Cas. Co.*, 2017 WL 5451749, at *5 (S.D. Ala. Nov. 14, 2017). Therefore, certification is unnecessary where, as here, there exists a well-developed body of law regarding the interpretation of insurance contracts, regardless of whether an Alabama court has ruled on the precise phrasing at issue here. *Stewart Title Guar. Co. v. Shelby Realty Holdings, LLC*, 83 So. 3d 469, 472 (Ala. 2011) (citing *Public Bldg. Auth. of Huntsville v. St. Paul Fire & Marine Ins. Co.,* 80 So.3d 171, 180 (Ala.2010)) ("[T]he interpretation of a contract does not present a novel legal issue. Rather, the rules of contract construction and interpretation are well established in Alabama [.]"). Indeed, the Alabama Supreme Court has declined to answer a certified question involving

construction of an insurance policy on grounds that such construction of an "insurance policy treads no new ground under Alabama law, and precedent determinative of such an analysis is well settled." *Stewart Title Guar. Co.*, 83 So. 3d at 472.

Similarly, this Court has declined to certify to the Alabama Supreme Court a question regarding the interpretation of an insurance policy due to the existence of sufficient sources of Alabama law to allow the Court to reach a principled conclusion. *Arnold*, 2017 WL 5451749, at *5. The court noted, "An unbroken line of Alabama cases requires that undefined terms in an insurance policy be given their common, everyday meaning and be interpreted as a reasonable insured would have understood them." *Id.* This Court should apply these well-settled rules of construction to this case and deny Plaintiff's request for certification. *See Trailer Bridge, Inc. v. Illinois Nat. Ins. Co.*, 657 F.3d 1135, 1139 (11th Cir. 2011) (denying request for certification to Florida state supreme court in insurance case); *Clarendon Nat. Ins. Co. v. Muller*, 237 F. App'x 451, 452 (11th Cir. 2007) (same). To date, approximately twenty lawsuits have been filed in federal courts in Alabama seeking property insurance coverage as a result of the COVID-19 pandemic. In none of these cases has the federal district court certified to the Alabama Supreme Court any question of policy interpretation.

## CONCLUSION

For these reasons, Defendant Continental Casualty Company respectfully requests that the Court dismiss with prejudice all of the claims asserted by the Plaintiff in the Class Action Complaint.

*/s/ M. Warren Butler*

M. WARREN BUTLER (BUTLM3190)
ALEX TERRY WOOD (TERRA6130)
Starnes Davis Florie LLP
11 North Water Street, Suite 20290
Mobile, AL 36602
Phone: (251) 433-6049
Fax: (251) 433-5901
*wbutler@starneslaw.com*
*atw@starneslaw.com*


JAY EZELLE (ASB-4744-Z72J)
MICHAEL A. FLORIE (ASB-7456-I53M)
SCOTT SALTER (ASB-7168-R57S)
STARNES DAVIS FLORIE LLP
100 Brookwood Place, 7th Floor
Birmingham, AL 35209
Telephone: (205) 868-6000
Facsimile: (205) 868-6099
*jezelle@starneslaw.com*
*mflorie@starneslaw.com*
*ssalter@starneslaw.com*

**Attorneys for Defendant**
**Continental Casualty Company**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 14, 2020 I served a copy of the foregoing on the following parties or attorneys of record by filing the same with the Clerk of Court via CM/ECF or by U.S. Mail, postage prepaid:

Richard H. Taylor, Esq.
W. Lloyd Copeland, Esq.
Steven A. Martino, Esq.
Taylor Martino, PC
P.O. Box 894
Mobile, Alabama 36601

John W. "Don" Barrett
BARRETT LAW GROUP, P.A.
404 Court Square North
Lexington, Mississippi

*/s/ M. Warren Butler*
M. WARREN BUTLER (BUTLM3190)

{B3572409}                                    17