IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| HILLCREST OPTICAL, INC., a corporation on behalf of itself and all others in the State of Alabama similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>CONTINENTAL CASUALTY COMPANY, )<br><br>Defendant. ) | CIVIL ACTION NO. 1:20-CV-275-JB-B |

**ORDER**

This matter is before the Court on Defendant Continental Insurance Company's ("Continental" or "Defendant") Motion to Dismiss (Doc. 17). The Motion has been briefed and is ripe for review.

**I.   BACKGROUND**

Plaintiff is an Alabama corporation which operates an optometrist office in Mobile, Alabama. (Doc. 1 at ¶¶1, 5, PageID.1 – 2). Defendant is an Illinois insurance corporation. Plaintiff purchased an "all-risk" insurance policy from Defendant to cover its property from May 1, 2019, until May 1, 2020. (*Id.* at ¶6, PageID.2). The parties do not dispute the policy's contents. The policy's "Business Special Property Coverage Form" provides: "[Defendant] will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause of Loss." (Doc. 1 at ¶9, PageID.3; Doc. 1-2, PageID.34) (capitalization in original). The policy's "Business Income and Extra Expense" endorsement provides:

1

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

(Doc. 1 at ¶11, PageID.3; Doc. 1-2, PageID.56) (capitalization in original).  The policy does not define the phrase "direct physical loss of . . . property."  (Doc. 1-2, PageID.56).  Plaintiff also purchased Extra Expense coverage from Defendant.  (Doc. 1 at ¶12, PageID.3) (capitalization in original).  That coverage provides:

> a. Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss.
>
> b. We will pay Extra Expense (other than the expense to repair or replace property) to:
>
>   (1) Avoid or minimize the "suspension" of business and to continue "operations" at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement premises or temporary locations; or
>
>   (2) Minimize the "suspension" of business if you cannot continue "operations."
>
> c. We will also pay Extra Expense (including Expediting Expenses) to repair or replace the property, but only to the extent it reduces the amount of loss that otherwise would have been payable under Paragraph **1.  Business Income** above.

(Doc. 1-2, PageID.57) (capitalization and emphasis in original).  The policy defines "operations" and "period of restoration" as follows:

Case 1:20-cv-00275-JB-N   Document 34   Filed 10/21/20   Page 3 of 17   PageID #: 511

19. **"Operations"** means the type of your business activities occurring at the described premises and tenantability of the described premises.

20. **"Period of restoration"** means the period of time that:
   a. Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

   b. Ends on the earlier of:

   (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

   (2) The date when business is resumed at a new permanent location.

   "Period of restoration: does not include any increased period required due to the enforcement of any law that:

   (a) Regulates the construction, use or repair, or requires the tearing down of any property; or

   (b) Regulates the prevention, control, repair, clean-up or restoration of environmental damage.

(Doc.1-2, PageID.51 – 52) (emphasis in original).

On March 13, 2020, President Trump declared the COVID-19 pandemic a national emergency. (Doc. 1 at ¶15, PageID.4). Following President Trump's declaration, Alabama Governor Kay Ivey declared the COVID-19 pandemic a State public health emergency and directed relevant State agencies to exercise their statutory and regulatory authority to implement measures to curb the rise of COVID-19 cases in Alabama. (Doc. 1-3, PageID.177).

3

On March 27, 2020, Dr. Scott Harris, the Alabama State Health Officer, entered a Statewide Order (the "Order") which provided, *inter alia*, all medical procedures would be postponed beginning March 28, 2020, with certain exceptions, until further notice. Plaintiff avers it shut down operations in compliance with the State's Order. (Doc. 1 at ¶17, PageID.4). Dr. Harris entered a second Order (the "Second Order"), approximately one month later (*Id.* at ¶18, PageID.5), allowing all medical procedures to resume. (Doc. 1-4, PageID.188). Plaintiff reopened and resumed its ordinary operations at its first available opportunity on April 30, 2020. (Doc. 1 at ¶18, PageID.5). Plaintiff alleges it suffered a substantial loss of business income as a consequence of the Order. (*Id.* at ¶19). Plaintiff does not allege COVID-19 was present on its premises.

Plaintiff filed a claim for its business income losses with Defendant on April 15, 2020. (Doc. 1 at ¶19, PageID.5). Plaintiff provided Defendant several documents with its claim, outlining its financial losses and other information Defendant requested. (*Id.*). Plaintiff's counsel sent an email to Defendant on May 4, 2020, advising if Defendant did not respond to Plaintiff's claim within five (5) days it would consider the claim denied and proceed with litigation. (*Id.*). Defendant did not respond within that time and Plaintiff commenced this action on May 15, 2020.

Plaintiff brings this action individually and for similarly situated parties. In its Complaint, Plaintiff seeks a Declaratory Judgment of its rights under the policy (Doc. 1 at ¶¶39, 40, PageID.10), and asserts a breach of contract claim. (*Id.* at ¶¶43 – 47, PageID.11). Plaintiff's breach of contract claim is limited to Defendant's alleged failure to cover Plaintiff's loss of business income. (*Id.* at ¶45). Plaintiff contends it suffered a direct physical loss of its property

because it lost the ability to use its property for its intended purposes as a consequence of the Order. (*Id.* at ¶22, PageID.5 – 6). Alternatively, Plaintiff contends the Court should certify the question of whether it has adequately alleged a direct physical loss of property to the Alabama Supreme Court because Alabama law lacks sufficient guidance to answer it. (Doc. 24, PageID.288).

## II.     STANDARD OF REVIEW

Rule 12(b)(6), Fed.R.Civ.P., provides a court may dismiss a claim for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss. *Id*. A plaintiff's claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.; see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted). "Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions." *Iqbal*, 556 U.S. at 678.

## III.    ANALYSIS[1]

Defendant contends Plaintiff's Complaint is due to be dismissed pursuant to Rule 12(b)(6) because: (1) Plaintiff failed to allege a direct physical loss of its property in accordance with the

---

[1] The parties address the policy's Civil Authority Endorsement (*See* Doc. 1-2, PageID.82) which modifies the Business Property Special Coverage Form and Extra Expense Endorsement. Plaintiff concedes this endorsement provides it no coverage. (*See* Doc. 18, PageID.236, 252 – 254).

policy's Business Special Property Coverage Form; (2) Plaintiff's inability to use its property for its intended purpose did not constitute a direct physical loss of property; and (3) Plaintiff failed to allege a period of restoration as required by the policy's Business Income and Extra Expense endorsement.  (Doc. 18, PageID.240, 246, 250).  In anticipation of Plaintiff's Opposition, Defendant also contends the Court should not certify the question of whether Plaintiff sufficiently alleged a direct physical loss because there is sufficient Alabama law to guide the Court in its decision.  (*Id.* at PageID.245 n.7).

In Opposition, Plaintiff maintains it adequately alleged a direct physical loss of property because the State's Order prevented it from using its property for its intended purpose.  (Doc. 24, PageID.289).  Plaintiff also contends it adequately alleged a period of restoration based on its interpretation of the word "repair" as it appears in the policy.  (*Id.*, PageID.296).  In Reply, Defendant again contends Plaintiff failed to allege a direct physical loss of its property.  Defendant contends Plaintiff's allegation that it lost its ability to use its property for its intended purpose fails to satisfy the policy's requirements.  (Doc.25, PageID.308 – 311).[2]

### A.   Alabama's principles of insurance contract construction.

Before considering the parties' arguments, the Court finds it appropriate to review Alabama's principles on insurance contract construction.  Matters of insurance contract construction under Alabama law are well-settled.  Generally,

> [t]he issue of whether a contract is ambiguous or unambiguous is a question of law for a court to decide. If a word or phrase is not defined in an insurance policy, then the court should construe the

---

[2] The parties also filed several notices of significant and pertinent authority which the Court has considered in making its determination.  (*See* Doc. 26; Doc. 28; Doc. 30).

> word or phrase according to the meaning a person of ordinary intelligence would reasonably give it.

*Crook v. Allstate Indemnity* Company, 2020 WL 3478552, *3 (Ala. 2020) (internal brackets, citations, and quotation marks omitted). Further,

> [t]he court should not define words it is construing based on technical or legal terms. When analyzing an insurance policy, a court gives words used in the policy their common, everyday meaning and interprets them as a reasonable person in the insured's position would have understood them. If, under this standard, they are reasonably certain in their meaning, they are not ambiguous as a matter of law and the rule of construction in favor of the insured does not apply. A policy is not made ambiguous by the fact that the parties interpret the policy differently or disagree as to the meaning of a written provision in a contract. However, if a provision in an insurance policy is found to be genuinely ambiguous, policies of insurance should be construed liberally in respect to persons insured and strictly with respect to the insurer.

*Id.* at *4. *See also Nationwide Mut. Ins. Co. v. Thomas*, 103 So.3d 795, 804 (Ala. 2012) (citing *Tate v. Allstate Ins. Co.*, 692 So.2d 822 (Ala. 1997)). Further, "an insurance policy must be read as a whole. The provisions of the policy cannot be read in isolation, but, instead, each provision must be read in context with all other provisions." *Cowart v. Geico Cas. Co.*, 296 So.3d 266, 270 (Ala. 2019) (quoting *Allstate Ins. Co. v. Hardnett*, 763 So.2d 963, 965 (Ala. 2000) (quoting *Attorneys Ins. Mut. of Alabama, Inc. v. Smith, Blocker & Lowther, P.C.,* 703 So.2d 866, 870 (Ala. 1996)).

### B. Plaintiff's request for certification to the Alabama Supreme Court is unavailing.

Rule 18 of the Alabama Rules of Appellate Procedure states that federal courts may certify "determinative" questions of law where "there are no clear controlling precedents in the decisions of the supreme court of this state" to receive "instructions concerning such questions

or propositions of state law[.]" Ala. R. App. P. 18(a).  In deciding whether to certify a question to the Alabama Supreme Court, courts are instructed to consider the following factors:

> (1) the closeness of the question; (2) the existence of sufficient sources of state law; (3) the degree to which considerations of comity are relevant in light of the particular issue and case to be decided; (4) the likelihood of recurrence of a particular issue; and (5) the practical limitations of the certification process.

*Arnold v. State Farm Fire and Casualty Company*, 2017 WL 5451749, *4 (S.D. Ala. 2017) (citing *Smigiel v. Aetna Casualty & Surety Co.*, 785 F.2d 922, 924 (11th Cir. 1986)); *see also Heatherwood Holdings, LLC v. First Commer. Bank*, 61 So.3d 1012, 1026 (Ala. 2010) (declining to answer a certified question where Alabama law was sufficient to guide the court in answering the certified question).

Plaintiff contends the Court must certify the question of whether it suffered a direct physical loss of its property because the issue is determinative to this litigation.  (Doc. 24, PageID.288).  Further, Plaintiff contends, "the Alabama Supreme Court would probably be inclined to accept the certified question, because the COVID-19 pandemic has generated numerous business-interruption-insurance lawsuits across the country, and several in this state[.]".  (*Id.*).  In Reply, Defendant argues the question is not close and present Alabama law can sufficiently guide the Court's analysis.  (Doc. 25, PageID.318 – 319).  Based on the analysis in section C., *infra*, the Court is satisfied certification is not necessary and shall address the substance of Plaintiff's arguments.

      **C.**      **The Court finds Plaintiff's arguments unavailing.**

In support of its argument that the Order caused a direct physical loss of its property, Plaintiff relies on *Total Intermodal Serv., Inc. v. Travelers Prop. Cas. Co. of Am.*, 2018 WL 3829767

(C.D. Cal. July 11, 2018) and *State Farm Mut. Auto. Ins. Co. v. Rodriguez*, 987 N.E.2d 896 (Ill. App. 2013). That reliance is misplaced. In *Total Intermodal*, the allegations of loss involved a complete and permanent dispossession of property. The court found that such a dispossession constituted a direct physical loss. *Total Intermodal Services Inc.*, 2018 WL 3829767, *3 – 4. Plaintiff's Complaint here does not allege complete and permanent disposition of Plaintiff's property.

*Rodriguez* likewise does not support Plaintiff's argument. In *Rodriguez*, police suddenly seized the defendants' cars after discovering they were purchased from a thief. *Rodriguez*, 987 N.E.2d at 898. The defendants filed insurance claims for the loss. Their insurance carrier denied the claims and filed declaratory judgment actions. *Id.* The relevant policy language provided: "**We** will pay: a. for **loss,** except **loss caused by collision,** to a **covered vehicle** [.]. **Loss** means: 1. direct, sudden, and accidental damage to; or 2. total or partial theft of a **covered vehicle.**" *Id.* at 899 (emphasis in original). The defendants argued, *inter alia*, the vehicles suffered damage because their seizure by police was sudden. The court disagreed, stating:

> We share the view of the trial courts that although the seizure of the vehicles does constitute damage to the defendants, it does not constitute damage "to" the covered vehicles. The defendants have not claimed that the seizure resulted in physical damage to the vehicles. The defendants have failed to suggest any reasonable interpretation of the term "damage" under which their vehicles, as opposed to the defendants themselves, have been damaged.

*Rodriguez*, 987 N.E.2d at 901.

Both *Total Intermodal* and *Rodriguez* concerned permanent physical dispossession of covered property, and to that extent are distinguishable from this case. The issue of whether the complete and permanent dispossession of property constitutes a direct physical loss of property is not before the Court.

9

The Court must determine whether a temporary inability to use property due to governmental intervention constituted a direct physical loss of property. Plaintiff contends the phrases "loss of" and "loss to" mean different things, and that they suffered a "loss of" their property notwithstanding that there was not a "loss to" it. Plaintiff attempts to support this argument based on a number of non-binding opinions, including *Sentinel Management Co. v. New Hampshire Ins. Co.*, 563 N.W.2d 296, 300 (Minn. App. 1997); *Farmers Ins. Co. of Oregon v. Trutanich*, 858 P.2d 1332, 1336 (Or. App. 1993); *Murray v. State Farm Ins. Fire and Cas. Co.*, 509 S.E.2d 1, 16 (W.Va. 1998); *TRAVCO Ins. Co. v. Ward*, 715 F.Supp.2d 699, 701 (E.D. Va. 2010). The Court finds these authorities to be materially distinguishable. Several of these cases addressed the phrase "direct physical loss *to* property." Others concerned physical contamination of premises that were rendered unusable due to an event which had a tangible effect on the property. *See e.g., Western Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52, 55 (Colo. 1968) ("[T]his particular 'loss of use' was simply the consequential result of the fact that because of the accumulation of gasoline . . . the premises became so infiltrated and saturated as to be uninhabitable . . ."); *Farmers Ins. Co. of Oregon v. Trutanich*, 858 P.2d 1332, 1335 (Or. App. 1993); *Oregon Shakespeare Festival Association v. Great American Insurance Company*, 2016 WL 3267247, *2 (D. Or. 2016) (finding physical loss of property where wildfire smoke infiltrated the covered premises), *vacated on other grounds by Oregon Shakespeare Festival Association v. Great American Insurance Company*, 2017 WL 1034203.

1. **A reasonable insured would not understand the policy language to cover Plaintiff's purely economic losses incurred as a consequence of the Order.**

As other courts in this Circuit have noted, there is scant state-specific case law on the issue before the Court. *See, e.g., Henry's Louisiana Grill, Inc., et al., v. Allied Insurance Company of America*, 2020 WL 5938755, *4 (N.D. Ga. 2020); *Malaube, LLC v. Greenwich Insurance Company*, 2020 WL 5051581, *6 (S.D. Fla. 2020). Indeed, the Court could find no Alabama decision addressing whether a temporary inability to use one's property for its intended purpose constituted a "direct physical loss of property." However, there is sufficient authority to guide the Court's decision on the meaning of that phrase.

First, the Court notes, that the words "direct" and "physical" modify the word "loss" in the phrase "direct physical loss of property." Therefore, analysis of this phrase must account for both words as they apply to the type of loss of property Plaintiff must have suffered to trigger coverage. *See, e.g., Henry's Louisiana Grill, Inc.,* 2020 WL 5928755, at *4; *Malaube, LLC*, 2020 WL 5051581, at *7 (citing *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014)).

The Alabama Supreme Court's decision in *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293 (Ala. 2000) provides substantial interpretative guidance regarding the meaning of "direct" in the context of the phrase "direct physical loss of property." There, the insureds purchased a "Homeowners' Extra" policy from State Farm. *Slade*, 747 So. 2d at 297. The policy covered the "direct physical loss[es] to [the insured's] property." *Id* at 298. The insureds' home was damaged by lightning during a severe thunderstorm when a bolt struck the insureds' retaining wall attached to their home. *Id*. at 297 – 298. This damage led to, *inter alia*, cracking in the interior

11

and exterior of the insureds' home due to shifting soil. *Id.* at 298.  State Farm ultimately denied coverage, arguing on appeal that the earth-movement exclusion in the parties agreement "unambiguously exclude[d] any loss caused in any way by earth movement." *Id*. at 310.   The insureds contended, *inter alia*, because the lightning directly struck their retaining wall, the earth-movement exclusion in the policy did not apply to their loss, and  the earth movement exclusion of their insurance contract was ambiguous and that it only applied to certain situations (earthquakes and landslides).  *Id*. at 308, 310. The court, analyzing insureds' cited precedent stated, "'direct' [loss] means 'immediate' or 'proximate' and is not synonymous with 'physical contact.'" *Id.* at 310 (quoting *Bly v. Auto Owners Insurance Co.,* 437 So.2d 495, 496 (Ala. 1983)).  Thus, Alabama precedent does not require a "direct loss," without more, to have a physical component, though the type of loss of property contemplated in policy must have been due to some immediate or proximate cause.  But, this does not end the Court's inquiry.

The Alabama Supreme Court has required some tangible alteration or disturbance to property to demonstrate physicality in most contexts.  *See Downs v. Lyles*, 41 So.3d 86, 92 (Ala. Civ. App. 2009) (finding physical trespass where appellant impermissibly traveled across, projected debris onto, and directed water onto appellee's property); *Town of Gurley v. M & N Materials, Inc.*, 143 So.3d 1, 13 (Ala. 2012) (inverse condemnation claim); *Hous. Auth. of the Birmingham Dist. v. Logan Props., Inc.*, 127 So.3d 1169, 1176 (Ala. 2012) (same).  Similarly, the Alabama Supreme Court has found  the mere presence of a pollutant in an area could not be reasonably understood to mean a "discharge, dispersal, release, or escape" – a physical act. *Porterfield v. Audobon Indem. Co.,* 856 So. 2d 289, 805 (Ala. 2002). Specifically, when confronting the issue of whether lead chips in paint constituted a pollutant, and whether the emission of such

chips was a "discharge, dispersal, release, or escape" the court held the mere presence of the chips could not comprise a "discharge, dispersal, release, or escape," though the inhalation of such chips indicated a physical release from the walls holding them. *Porterfield*, 856 So. 2d at 805 – 806 (collecting cases).[3]

Furthermore, the insurance treatise upon which Alabama courts frequently rely in insurance coverage disputes indicates a direct physical loss requires a tangible injury to property.[4] *See* COUCH ON INSURANCE 10A § 148:46 ("The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.").

Though Plaintiff maintains its inability to use its property constitutes a direct physical loss, the Court is not persuaded. Plaintiff's loss of usability did not result from an immediate occurrence which tangibly altered its property – the Order did not immediately cause some sort of tangible alteration to Plaintiff's office. Rather, Plaintiff was only temporarily precluded from performing routine medical procedures while the Order was in effect. Under Plaintiff's

---

[3] The Court is aware that the Alabama Supreme Court has recognized physical disturbance by acts which cause property to be less enjoyable or less accessible. *See, e.g.*, *See Ala. Power Co. v. Guntersville*, 177 So. 332, 336 – 337 (Ala. 1937) (discussing cases where compensable physical injury to property was done where municipalities levelled sidewalks and removed homeowners' trees).

[4] For examples of Alabama courts' reliance on COUCH in various contexts, *see, e.g., Carolina Cas. Ins. Co. v. Williams*, 945 So.2d 1030, 1035 (Ala. 2006); *Allstate Ins. Co. v. Skelton*, 675 So.2d 377, 382 (Ala. 1996); *Int'l Surplus Lines Ins. Co. v. Assocs. Commercial Corp.*, 514 So.2d 1326, 1327 (Ala. 1987); *State Farm Fire & Cas. Co. v. Lambert*, 291 Ala. 645, 647, 285 So.2d 917, 917 (1973). Defendant also presented authority demonstrating this position in its Memorandum. (*See* Doc. 18, PageID.245).

interpretation, possession carries the same meaning as usability; therefore, loss of possession is equivalent to the inability to use something.  However, not every instance of possession leads to use.  For instance, a person can possess a car but be unable to use it due to gas rationing ordered by the government.  This type of argument has been attempted in this Circuit before and found unavailing.  *See Northeast Georgia Heart Center, P.C. v. Phoenix Insurance Company*, 2014 WL 12480022, *1 (N.D. Ga. 2014) (applying Georgia law: "Without doubt, losing physical possession may qualify as a direct physical loss. Nonetheless, there is a difference between a loss of physical possession and a loss of use. This difference is critical because the policy covers only lost business income *caused by* direct physical loss. Even though plaintiff suffered a direct physical loss by returning the generator, that loss did not cause plaintiff's lost business income.").  As one district court describes it, Plaintiff's argument here would "potentially make an insurer liable for the negative effects of operations changes resulting from any regulation or executive decree, such as a reduction in a space's maximum occupancy." *Henry's Louisiana Grill, Inc,* 2020 WL 5938755, at *5.

Notably, several courts have recently decided that absent allegations of some tangible alteration to property, litigants have suffered no direct physical loss of property in other business interruption disputes arising consequent to COVID-19 closure orders.  *See Malalube, LLC, v. Greenwich Ins. Co*., 2020 WL 5051581, *8 (S.D. Fla., 2020) (applying Florida law:  "Although the plaintiff in *Mama Jo's* failed to put forth any evidence that his cleaning claim constituted a direct physical loss, he at least alleged that there was a physical intrusion (i.e. dust and debris) into his restaurant.  Plaintiff has done nothing similar in this case.  Plaintiff merely claims that two Florida Emergency Orders closed his indoor dining.  But, for the reasons already stated, this cannot state

14

a claim because the loss must arise to actual damage."); *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known as Syndicate PEM 4000*, 2020 WL 5791583, at *4 (M.D. Fla. 2020) (citing *Malaube*, 2020 WL 5051581, at *8) (applying Florida law: "[T]he action should be dismissed because the policy required direct physical loss or property damage and plaintiff had alleged 'merely [ ] economic losses—not anything tangible, actual, or physical.'"); *Pappy's Barber Shops*, Inc. v. *Farmers Group, Inc.*, 2020 WL 5500221, at *4 (S.D. Cal. 2020) (applying California law); *Henry's Louisiana Grill, Inc., et al., v. Allied Insurance Company of America*, 2020 WL 5938755, *4 (N.D. Ga. 2020) (applying Georgia law: "This interpretation of the contractual language exceeds any reasonable bounds of possible construction, pushing the words individually and collectively beyond what any plain meaning can support.").

The Court finds the guidance from Alabama courts, as well as those above, persuasive in this matter and concludes a reasonable insured would not understand a "direct physical loss of property" to have occurred as a consequence of the State's Order.

### 2. A reasonable insured would not understand the Second Order to constitute a "repair" under the policy.

Plaintiff next argues the "period of restoration" contained in the policy contemplates Plaintiff's inability to use its property as a "direct physical loss of property." (Doc. 24, PageID.296). Specifically, Plaintiff argues its property required "repair" because the Order rendered it unusable and the Second Order returned it to a "sound or healthy state." (*Id.* at PageID.297).

The Business Income and Extra Expense Endorsements in the policy provides, in relevant part, Defendant shall "pay for the actual loss" of Plaintiff's business income "due to the necessary 'suspension' of [its] 'operations' during the 'period of restoration'" and this "suspension" must

15

have been caused by a "direct physical loss of property." (Doc.1-2, PageID.56). The "period of restoration" is defined as "the date of direct physical loss . . ." and "[e]nds the earlier of: (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent location." (Doc. 1-2, PageID.51 – 52). This period of restoration "does not include any increased period required due to the enforcement of any law that: (a) Regulates the . . . use . . . of any property[.]". (Doc.1-2, PageID.52).

It is apparent from the above that a "direct physical loss of property" contemplates the tangible alteration of property which would necessitate a party's absence to fix it or require the party to begin operations elsewhere. The "period of restoration" expressly assumes repair, rebuild or replacement of property. Read in context with "direct physical loss of property," a "period of restoration" can occur only by virtue of a repairable, rebuildable, or replaceable physical alteration of covered property. This begs the question: how can a statewide order which "required" Plaintiff to shutdown necessitate some sort of repair? In answer to this, Plaintiff argues a "repair" in certain contexts includes "restor[ing] [the property] to a sound or healthy state." (Doc. 24, PageID.296 – 297). But Plaintiff claims its property was not in a sound state only because it could not use its property. (Doc. 24, PageID.297). Plaintiff was not dispossessed of its property due to the Order, nor was there any tangible alteration to it. Plaintiff's inability to use its property was not caused by an unsound and or unhealthy condition of the property itself, which necessitated repair, rebuilding, or replacement.

Further, the Court is not persuaded that Plaintiff's interpretation of "repair" is one that would be shared by a reasonable insured. Rather, the meaning generally given to "repair" in

16

Alabama and elsewhere indicates a reasonable insured would understand a "repair" to become necessary only upon a tangible alteration of property.  *See "*REPAIR," BLACK'S LAW DICTIONARY (11th ed. 2019); *Pritchett v. State Farm Mut. Auto. Ins. Co.*, 834 So.2d 785, 791 (Ala. Civ. App. 2002) ("In the common usage, the word 'repair' means to fix by replacing or putting together what is broken, or, as the court in *Carlton v. Trinity Universal Ins. Co.,* [32 S.W.3d 454 (Tex.Ct.App.2000)], stated, 'to bring back to good or useable condition.' *O'Brien v. Progressive N. Ins. Co.,* 785 A.2d 281, 290 (Del.2001)."); *Wildin v. Am. Family Mut. Ins. Co.*, 638 N.W.2d 87, 90 (Wis. 2001) ("The common and ordinary meaning of 'repair' is 'restore by replacing a part or putting together what is torn or broken.'").

### D. Plaintiff's request for a Declaratory Judgment fails because its breach of contract claim fails.

Where a plaintiff's request for a declaratory judgment is premised on its underlying legal claims and those claims fail, as is the case here, its request for a declaratory judgment also fails. *See Sadeghian v. Univ. of S. Ala.,* 2020 U.S. Dist. LEXIS 29534, *38 (S.D. Ala. Feb. 21, 2020) (collecting cases).  Because Plaintiff's underlying legal claims fails, so too does its request for a Declaratory Judgment.

### CONCLUSION

Defendant Continental Insurance Company's Motion to Dismiss (Doc. 17) is granted. Plaintiff's Complaint is dismissed with prejudice.

**DONE and ORDERED** this 21st day of October, 2020.

/s/ JEFFREY U. BEAVERSTOCK
UNITED STATES DISTRICT JUDGE